MINNIE C. HOLLISTER v. GEORGE W. RUDDY.

Submitted December 8, 1900—Decided February 25, 1901.

Where trees valuable only for lumber or cordwood are cut down by a trespasser under circumstances involving no peculiar injury to the landowner, punitive damages are not recoverable even though permission to cut was asked and not granted. In such a case the true measure of damage is just compensation.

On defendant's rule to show cause.

Before Depue, Chief Justice, and Justices Dixon, Gummere and Collins.

For the rule, *Ephraim Cutter.*

*Contra, John T. Dunn.*

The opinion of the court was delivered by

Collins, J.  The plaintiff recovered, at the Middlesex Circuit, a verdict for $750 for the cutting down of certain trees by the defendant.  The claim was for thirty-two trees, some of which stood on or near the line between the land of the plaintiff and that of the wife of the defendant, and the others entirely on the plaintiff's land.  The defendant admitted cutting those on or near the line, thirteen in number, and denied cutting the others.

The learned trial justice instructed the jury that for such of the trees as stood on the line—that is, partly on the land of the plaintiff and partly on that of the wife of the defendant—there might be a recovery for the value of the plaintiff's interest, and for such as stood entirely on the plaintiff's land and were cut down by the defendant there might be a recovery for the full value.  He further instructed the jury that if they found that the timber cut was fit to be sawed into lumber for building purposes, then its value should be figured on the basis of the value of standing trees that could be sawed up into lumber; and if, on the other hand, they found that the timber was only fit to be cut into cordwood, then on the basis of what it was worth standing as it was for cordwood, and he then continued thus: "After you have reached the valuation on one basis or the other then you may also do this. If you believe that the action of this defendant, in entering upon the plaintiff's land and cutting the trees, was wanton, willful and malicious, and that he meant to take property that he knew was not his own, and cut down the trees maliciously and carried them away without the plaintiff's

knowledge or consent, you may add such damages as you think is proper punishment for a man who willfully does an illegal act of trespass of that character."

The clear weight of the evidence was that the defendant had not cut, or authorized the cutting, of more than the thirteen trees that stood on or near the line, and that they were fit only to be cut for cordwood. Their value, on this basis, according to the testimony, was about twenty dollars. The utmost value claimed by the plaintiff for the entire thirty-two trees was $400. It is plain, therefore, that the jury allowed punitive damages, and the chief question now demanding consideration is whether they were justified in so doing.

The right to award punitive damages rests, primarily, upon a single ground—wrongful motive. *Fohrmann* v. *Consolidated Traction Co.,* 34 *Vroom* 391. There was no competent evidence that the defendant had authorized the cutting of more than the trees on or along the boundary line,·and he claimed that his reason for cutting those was that they shaded the meadow on his wife's farm, which he cultivated, so as to prevent the raising of full crops. He also claimed that he had procured permission from the plaintiff's father, who was in charge of the property, for the cutting of those trees. On cross-examination, the father, Sebastian V. Hollister, when called as a witness on the plaintiff's direct case, gave the following testimony:

"*Q.* Did you not have a conversation with Mr. Ruddy, before these trees were cut, in regard to the trees?

"*A.* I met Mr. Ruddy there one day before I met him on the line.

"*Q.* How long before?

"*A.* I don't remember exactly.

"*Q.* Didn't he ask you for permission to cut the trees?

"*A.* He asked me permission to cut two or three shade trees that shaded his ground; he said they shaded his land and he could not raise what he wanted on it.

"*Q.* Didn't you give him permission to cut them?

"*A.* No, sir; I emphatically told him the property belonged to another party, and that I would not even ask them to give consent to it; that the trees were there, and were an ornament to the place and were useful."

The defendant, called as a witness in his own behalf, testified that, after a letter from him on the subject, Mr. Hollister called at his store in the fall of 1898, and that they drove up to the farm, and he gives the following testimony as to the interview:

"*Q.* What was said about the trees?

"*A.* He took me up and showed me what to cut; he said I could cut all those trees along the line.

"*Q.* Which line?

"*A.* Along my line and the Hollister line.

"*Q.* What did you say to him before he said that; did you tell him you wanted to buy them or what?

"*A.* Of course, I expected to pay Mr. Hollister for the wood—as they were line trees, his portion.

"*Q.* State the conversation?

"*A.* That was merely the conversation; that I would pay him whatever they were worth; I didn't care nothing about the wood; it was merely to get the trees away on account of shading my place.

"*Q.* That is what you said to him?

"*A.* Yes.

"*Q.* What did he say?

"*A.* He said, 'All right; you can cut them all, and cut anything in the woods that you want; all along the line of the woods;' I told him I didn't want that.

"*Q.* You told him you didn't want those in the woods?

"*A.* Yes; it was not the wood I was after, but merely to get the shade off my place.

"*Q.* It was cleared land on your side?

"*A.* Yes.

"*Q.* What kind of land was it on the Hollister side?

"*A.* Swampy, brush and low.

"*Q.* What did you have growing on your side?

"*A.* At that time I had hay; it was meadow."

Mr. Hollister, when recalled for the plaintiff in rebuttal, did not deny the receipt of the letter referred to, or his visit to the defendant, or the drive out to the farm. This is his testimony:

"*Q.* Mr. Ruddy says that you gave him the privilege to cut those trees; how is that?

"*A.* I never gave him any privilege to cut any trees or any bushes, or any thing else, or anyone else, without stipulating the price that they were to pay for them; I sold trees to Mr. Cutter, but I never sold a tree to Mr. Ruddy, and never gave him any encouragement to cut them; the trees did not shade his ground at all; they stood on the northwest side of the fence, and the sun rises on this side, and they never shaded his ground—the shade comes this way.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"*Q.* Had you ever any authority to sell this wood on this particular line?

"*A.* No, sir; I never asked for any.

"*Q.* Did you know that these trees were being cut?

"*A.* No, sir."

The jury were instructed that if Mr. Hollister did give the defendant permission to cut the trees that he cut, that would be a full defence to the suit; the court holding, for the purposes of the case, that Mr. Hollister had authority to grant permission. Of course, the verdict determined that permission was not given, and on that point alone we would not disturb it; but it seems to us quite plain that the jury were not justified in finding the defendant's conduct wanton or malicious. Without conceding that for a mere trespass on lands and the cutting of trees that have no special value in themselves, and the cutting of which inflicts no peculiar injury on the landowner, punitive damages can ever be properly awarded, we see no ground for their allowance on the testimony above cited. In *Trainer* v. *Wolff, 29 Vroom* 381, on which the plaintiff relies, the trespass consisted in removing the weather boards from the plaintiff's dwelling-house; a very different case from the mere cutting down of trees useful only for lumber or cordwood, the value of which can readily be meas-

ured. If punitive damages can be sustained in the present case, there seems to be no reason why they should not be awarded in every case of trespass on land not committed through a mistake of location, even if there is an honest dispute as to permission being granted, should the jury decide it against the defendant.

It is not uncommon for private corporations, vested with the power of eminent domain, to deliberately trespass upon lands in advance of proceedings to condemn. Of course, in so doing, the corporation may be put to a disadvantage when an award of compensation is made, but I have never understood that, in the absence of any irreparable injury or peculiar hardship, anything more is assumed than the burden of making just compensation. In *Kountze* v. *Morris Aqueduct Co.,* 9 *Dick. Ch. Rep.* 40, the late Chancellor McGill refused an injunction to stay condemnation proceedings until complainant's land should be restored to its natural condition, although the defendant admitted a deliberate trespass and a diversion of water without the landowner's permission, while the parties were negotiating for a sale of the rights to be taken.

In the case in hand the jury were permitted to give punitive damages on resolving against the defendant what seems to have been an honest dispute as to permission for the act found to be a trespass. It is true that some of the trees cut were exactly on the boundary line, and it is argued that that fact gave them a peculiar value. No such value was contended for or submitted to the jury. The line was not obliterated, for the stumps of the trees remained in the earth, and the line itself was shown by a post and wire fence, which, though considerably fallen into decay, still left the boundary line between the parties clearly discernible. There was no peculiar injury or any indignity inflicted on the plaintiff. It will be enough if she gets just compensation, which, of course, may include the value, if any, of any of the trees as line trees.

The rule to show cause will be made absolute.