71 N.J. Super. 329 (1962)
176 A.2d 805
CARL W. HUBER, ET AL., PLAINTIFFS-RESPONDENTS,
v.
JOSEPH P. SERPICO ET AL., DEFENDANTS AND THIRD-PARTY PLAINTIFFS-APPELLANTS,
v.
TIMBERBROOK CORPORATION, A NEW JERSEY CORPORATION ET AL., THIRD-PARTY DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 25, 1961.
Decided January 8, 1962.
*332 Before Judges CONFORD, FREUND and LABRECQUE.
Mr. Clifford W. Starrett argued the cause for defendant and third-party plaintiffs Joseph P. Serpico et al. (Messrs. Schenck, Smith and King, attorneys).
Mr. Albert B. Jeffers, Jr., argued the cause for plaintiff Carl W. Huber et al. (Messrs. Jeffers and Mountain, attorneys).
Mr. Henry Rowe Van Houten argued the cause for third-party defendant Robert C. Edwards Associates, Inc. (Mr. Paul Bangiola, attorney).
Mr. Myron J. Bromberg argued the cause for third-party defendant Timberbrook Corporation (Mr. Ralph Porzio, attorney).
The opinion of the court was delivered by LABRECQUE, J.S.C. (temporarily assigned).
This is an appeal by defendants and third-party plaintiffs, Joseph P. Serpico, individually, and Paul L. Serpico and Joseph P. Serpico, trading as partners, under the partnership name of Serpico Piling and Timber Company (Serpico), from a judgment entered against them in the sum of $6,500 in favor of the plaintiffs Carl W. Huber and Helen W. Huber following a jury verdict, and from a judgment of involuntary dismissal pursuant to R.R. 4:42-2(b), 4:42-3, in favor of the third-party defendants Robert C. Edwards Associates, Inc. (Edwards) and Timberbrook Corporation (Timberbrook).
The complaint sounded in trespass, its gravamen being the cutting down by Serpico of some 50 trees on lands belonging to the plaintiffs. Serpico, in turn, filed a third-party complaint against Edwards and Timberbrook alleging, in effect, that it was caused to trespass on Hubers' lands and cut down Hubers' trees, by virtue of the misleading *333 and erroneous posting of surveyor's stakes and markers by Edwards, while in the performance of a survey for Timberbrook in discharge of Timberbrook's contract obligation with Serpico to indicate to it the boundary lines between the properties of Timberbrook and the adjoining lands of Huber. Under the contract in question, Serpico purchased the right to cut timber on some 25 acres of Timberbrook land part of which immediately adjoined Huber.
At the conclusion of the taking of testimony on behalf of plaintiffs and of defendants, motions for involuntary dismissal on behalf of Edwards and Timberbrook were granted by the trial court. Thereafter, the case proceeded against defendants Serpico alone, resulting in the verdict for the plaintiffs.
Subsequent to the filing of the third-party complaint, plaintiffs' complaint had been amended to add counts making Timberbrook and Edwards defendants on substantially the same theory as urged by Serpico. There was an involuntary dismissal as to these counts from which no appeal has been taken by plaintiffs.
Defendants allege error in the dismissal of their third-party complaint as to Edwards and Timberbrook and in the admission of certain testimony for the plaintiffs bearing on the question of damages.
At the trial plaintiffs produced evidence of their ownership and occupancy of a 14.5-acre tract of land containing their residence and outbuildings. Residence tracts in the neighborhood are relatively large. The Huber tract contained a yard, pasturage and a grove of trees ranging in age from 70 to 85 years, including red, white and black oak, black birch, ash and yellow poplar. The grove was used by plaintiffs and their family for purposes of enjoyment and recreation. While they were away on vacation during the Summer of 1959, Serpico came upon the premises, cut down the grove, and removed the salable wood. A large amount of debris was left behind. The *334 dragging of the felled trees from the premises caused additional damage to the surface of the land. The stumps were permitted to remain, and trees which were not cut down were damaged by the felling of the larger trees, and were made more vulnerable to the action of the wind.
Three experts gave evidence as to damages. Their testimony will be referred to infra.
The testimony for defendants indicated that on July 14, 1959 Serpico had entered into a contract to cut down and remove certain timber on 25 acres of the Timberbrook property which adjoined that of plaintiffs. The contract required Timberbrook to "cause the property lines of their lands to be indicated to the buyer." Serpico purchased only the timber on the 25-acre portion, and Edwards was hired by Timberbrook to establish the rear line which would separate the 25-acre tract from the balance of its property.
Edwards had been previously hired, in 1957, to survey all of the property then being acquired by Timberbrook. This involved inclusion in the survey map of a portion of adjoining lands of plaintiffs and one Butterworth. Pursuant thereto it had prepared a map of all the property mentioned dated March 29, 1957. Before the Serpico contract was actually executed, the rear line of the 25-acre piece had been located and indicated on the 1957 survey map by Edwards. Joseph P. Serpico, on behalf of defendants, had walked the rear line and flagged it before the contract was signed. Timberbrook furnished Serpico with a copy of Edwards' survey-map showing the 25-acre tract before the commencement of cutting operations. He was told, on behalf of Timberbrook, that the services of Edwards were at his disposal if he required them. He never called on Edwards for assistance. He explained on cross-examination, "I went according to this survey." He asserted his familiarity with surveyors' maps and with the location of the property lines as shown on the map furnished him.
*335 Joseph P. Serpico conceded that he had trespassed upon the Huber tract in his timbering operations. He asserted that this was due to the misplacing of the terminal point of the rear line of the tract. The survey map which had been furnished him indicated that the rear line terminated at the Huber-Timberbrook line and then proceeded along that line to the street. Instead of stopping at the Huber-Timberbrook line, Serpico continued his operations along a projection of the rear line of the 25-acre tract onto plaintiffs' property until he came to a stake in a line which separated the Huber property from that of another neighbor, Butterworth. A swath had been cut along the rear line, and he found a lath along the course every 100 or 150 feet. There was no such lath at the Huber-Timberbrook line, and the stake beyond it, to which he cut, appeared to be older than the other stakes. He also knew of the marked location of a projected road which paralleled the front portion of the Huber-Timberbrook line, which was to be used in connection with the logging operation.
Serpico's contention was that the absence of a marker on the ground at the Huber-Timberbrook line, taken in conjunction with the stake at the Huber-Butterworth line, misled him, and that Edwards was responsible for these deceptive conditions.
Considering the testimony in the light most favorable to defendants, they were furnished with a survey map which accurately depicted the boundary lines of the 25-acre tract. The brush had been cut along the rear line of the tract and also part way along the street end of the Huber-Timberbrook line. There was a stone row and fence along this end of the boundary, but it likewise did not go all the way back. Edwards had not erected any flag or marker to show the junction of the rear line with the Huber-Timberbrook line. There were other survey stakes and markers which had been left from Edwards' previous survey of the entire tract. Serpico, in the absence of a marker, continued along what he thought to be the course of the *336 rear line to one of the old survey stakes. It was never intended or represented to be a guide to the boundaries of the 25-acre tract.
The third-party complaint contained counts praying for contribution under the Joint Tortfeasors Contribution Law (N.J.S. 2A:53A-1 et seq.), and for indemnity. Serpico asserted that Timberbrook breached its contractual duty to it, and that since Edwards was acting for Timberbrook in the performance of Timberbrook's obligation to indicate the boundary lines, Timberbrook was equally responsible with Edwards for the alleged negligence which brought about the trespass, and that they all thereby became co-trespassers.
It is first urged that the evidence created a jury question as to the liability of Edwards as a co-trespasser, since the trespass by Serpico arose from the failure of Edwards to indicate the terminal point of the rear line. This contention is based upon the hypothesis that it was Edwards' duty to show a physical mark on the ground at the point where the rear line intersected the Timberbrook-Huber boundary.
The difficulty with this contention is the fact that the case is devoid of evidence of any such requirement on the part of Edwards. Regardless of Timberbrook's obligation to Serpico, Edwards could be held only to the extent of the obligation to Timberbrook which it had assumed. So far as the record is concerned, it was required to calculate the location of the rear line of the 25-acre tract and prepare a map or plat showing it. It is conceded that the map which it prepared was accurate. There is no proof that it was hired to erect monuments or markers or that this was a professional obligation by custom or otherwise. It was to remain available to assist Serpico when called upon, and it did so. Serpico made no request for assistance or clarification but proceeded "on his own."
In the absence of evidence leading to the inference that Edwards failed in the performance of his contract with *337 Timberbrook, since there was no claim of any direct dealings between Edwards and Serpico, there was nothing from which a jury could conclude that Edwards failed in any duty owing to Serpico. Assuming, arguendo, that there was negligence in the staking out of the lines by Edwards, this would not make him jointly liable in trespass for purpose of application of the rule of either indemnification or of contribution as between joint tortfeasors. We do not deal here with a situation in which a third party, whether by mistake or otherwise, has directed the actual trespasser to go upon the specific property involved. La Bruno v. Lawrence, 64 N.J. Super. 570 (App. Div. 1960). Edwards neither aided in, commanded nor procured any trespass to be made by Serpico, nor did it encourage such an act. Starego v. Soboliski, 11 N.J. 29 (1952). From all that appears in the undisputed proofs in the case, Edwards had no knowledge that Serpico was having difficulty in locating the terminal point of the rear line. It was ready and available to assist Serpico in locating it, if it had been called upon.
It follows that the trial court properly dismissed Serpico's third-party complaint against Edwards. In view of the conclusion thus reached, it becomes unnecessary to consider the contention that lack of privity between Edwards and Serpico precluded liability.
The trial court dismissed the third-party complaint as to Timberbrook upon a finding that Edwards was an independent contractor for whose acts Timberbrook would not be responsible, and upon the further ground that a clause in the contract itself, whereby Serpico agreed to "assume all liability for damage or for any other liability which may ensue from timbering operations or use of the lands of the seller pursuant to this agreement," prevented recovery.
Since we have found that there was no basis for Serpico's holding Edwards liable, it follows that Timberbrook cannot be liable to Serpico by reason of any imputation to it of *338 wrongdoing by Edwards. However, even if there were a basis for holding Edwards liable to Serpico, the liability of Timberbrook would not follow.
Ordinarily, an owner of land who engages a contractor, who conducts an independent business by means of his employees, to do work which does not constitute a nuisance, is not liable for the negligent acts of the contractor in the performance of the work. However, where the landowner retains control of the manner and means of doing the work, or where he engages an incompetent contractor, or where the activity contracted for constitutes a nuisance per se, the owner may be held liable. Majestic Realty Associates, Inc. v. Toti Contracting Co., 30 N.J. 425 (1959), affirming 54 N.J. Super. 419 (App. Div. 1959). In the case before us, the landowner did not retain control over the work. There is no assertion that the surveyor was incompetent or that the work contracted for constituted a nuisance per se. Such being the case, even had the negligence of Edwards been established, there would have been no respondeat superior liability on the part of Timberbrook. Nor was there evidence from which the jury could have concluded that Timberbrook failed in the performance of its contract, whether through its own negligence or otherwise.
It is urged on behalf of Serpico that Majestic Realty Associates should not apply in cases involving a trespass to lands, and that the failure of Edwards and Timberbrook to properly indicate the boundary line, constitutes them all co-trespassers as to the Hubers, citing Kopka v. Bell Telephone Co., 371 Pa. 444, 91 A.2d 232 (Sup. Ct. 1952), and a line of similar holdings. But that case is clearly distinguishable, it appearing that the action of the defendant in pointing out the place where the contractor was to dig the hole was the cause of the trespass and consequent personal injuries sustained by the plaintiff when he fell into the hole. Other cases cited by the defendants involved instances where the wrong boundary line was pointed *339 out, such as Crisler v. Ott, 72 Miss. 166, 16 So. 416 (Sup. Ct. 1894); Cummer Manufacturing Co. v. Copeland, 35 S.W.2d 758 (Tex. Civ. App. 1931) (not officially reported), and Kirby Lumber Co. v. Karpel, 233 F.2d 373 (5 Cir. 1956); or where the wrong trees were pointed out, as in Hambright v. Walker, 211 S.C. 201, 44 S.E.2d 310 (Sup. Ct. 1947), and Kennedy v. Perry Timber Co., 219 La. 264, 52 So.2d 847 (Sup. Ct. 1951); or where, as in Kopka v. Bell Telephone Company, supra, an act was done or authorized to be done which constituted a trespass on another's property. Lewis v. Mays, 208 Ark. 382, 186 S.W.2d 178 (Sup. Ct. 1945); Oswalt v. Smith, 97 Ala. 627, 12 So. 604 (Sup. Ct. 1893).
In the case sub judice these elements were entirely absent. Timberbrook agreed to cause the property lines to be indicated to the buyer. It prepared and furnished an accurate map which did so. Serpico was to have followed the map. He was admittedly familiar with surveyors' maps. He claimed he proceeded "according to the survey." The services of the surveyor who made the map were offered to him. Certainly, if he had utilized the means made available to him, he would have had no difficulty in locating the property lines. The granting of the motion to dismiss as to Timberbrook was accordingly proper and it becomes unnecessary to consider the effect of the indemnity clause in the contract upon Timberbrook's liability to Serpico.
We turn to consideration of the alleged errors in the admission of evidence and the refusal to grant a requested charge submitted by the defendants Serpico, both in relation to damages. While the complaint filed had sought both compensatory and punitive damages, the latter claim was later abandoned and the case was submitted to the jury as to compensatory damages only.
In reviewing the proofs relative to damages, it must be kept in mind that the area where the felled trees stood was a 2 1/2 to 3-acre, steeple-shaped, rear triangular protrusion *340 from plaintiff's main rectangular property which fronted on the road, on which his dwelling was located. The property as a whole encompassed 14 1/2 acres. It had cost the plaintiff some $20,000 to $21,000 in 1953 or 1954. No evidence was adduced as to the value of the property as of August 1959, when the trespass occurred. A real estate expert testifying for defendant appraised the rear portion of the land at $1,000 an acre, or at approximately $3,000.
One of the critical issues submitted to the jury at the trial was whether the question of damages should be approached from the standpoint that the trees cut down possessed a shade tree or aesthetic value, or only a value for timber. From the evidence it would appear that the area in question was woodland, with the stand of trees fairly densely grown. However, plaintiff testified that the area was one of "rather magnificent trees, most of them * * * oak trees." He said "It was certainly shaded. It was a place where moss and fern and dogwood thrived. I had become conscious of trees. These were extremely large trees, such as I seldom see standing anywhere in this area or any nearby area. It was a beautiful piece of property with these trees on them." He used this part of the property "just for * * * enjoyment." There was corroborating evidence by Moore, one of plaintiff's tree experts, of the utility and value of the trees for shade tree or ornamental purposes. However, there was also evidence that many of the trees would have had to be removed if the rear portion of the property were to be separately developed for residential purposes; also, that while they were somewhat larger, the stand of trees was essentially comparable with that on the adjoining Timberbrook property, with a character and value primarily as timber.
Plaintiff produced one Swanger, a qualified tree expert, who testified that the cost of clearing the debris left from Serpico's timbering operations would amount to $3,000. It *341 was stipulated that 50 trees had been cut down, having an average diameter of 19 inches. This witness was permitted to testify that it would cost not less than $100 per tree of that dimension to purchase the same from a nursery. When the witness was asked what it would cost to replant a tree of that description on plaintiff's property, defendant Serpico objected, but solely on the ground of irrelevance. Judged by their apparent concurrence in objections stated by counsel for the other defendants, it would appear that the basis for the Serpico objection, as well as the others, was the duplication of proof in reference to replacement cost of the trees and proof as to their fair market value as timber. However, plaintiff forthwith indicated the absence of any claim for damages on the basis of the timber value of the trees. Swanger went on to testify that it would cost $2,100 or $2,200 to transplant a 19-inch tree in such manner as would assure its survival. The trial judge permitted this testimony to stand, but, in interrogation of the witness, he implied skepticism as to the practicability or soundness of replacing the 50 cut trees at a total cost of over $100,000.
The plaintiff took the testimony of another tree expert, Moore, on pretrial depositions, and these were introduced in evidence. Moore first stated a value for the felled trees, considered as timber, in the sum of $746.45. He was then asked to state their value considered as shade trees. Over objection by defense counsel on the ground that no evidence had been adduced supporting the character of the trees as shade trees, the witness was permitted to give a valuation on that basis of $2,678. He also testified that the cost of clearing away the debris would be $1,297. He gave it as his opinion that the proper rehabilitation of the property, in view of its condition, should be effected by the planting of 3" saplings at an estimated cost of $5,000. Objection was also tendered to this estimate on the ground that it involved an inconsistent and duplicative approach to the issue of damages.
*342 A real estate expert for the defendant, Dodd, testified that the cutting of the trees had not resulted in any diminution of the market value of the plaintiffs' entire 14 1/2-acre tract. He gave further testimony from which a jury could infer that there was no diminution in the market value of the rear portion consequent upon the destruction of the trees.
The trial judge charged the jury, in effect, that it was required to determine, first, "the character of these trees," whether as timber or as shade trees. The jury was not, however, to compensate the plaintiffs "from a number of inconsistent angles." It was to decide first whether the damages should be estimated on the basis of whether the trees were shade trees or timber. In the alternative, it could approach the question of damage "by comparing value before and after the occurrence." The jury was told "to use fundamental common sense" and then, on the basis of the factual evidence and the expert opinions "try to come to a fair, sensible and reasonable result." The jury was enjoined to "determine what sum of money will fairly, reasonably and adequately compensate the plaintiffs for their loss" from the evidence in the case and from nothing else.
Although defendants submitted a number of requests to charge, they took exception only to the refusal of the trial judge to charge their request No. 7. This was to the effect that "since plaintiffs still will continue to own the premises after this action is concluded and title to the property will not pass to the defendants, that the total damages awarded shall not exceed the full value of the land prior to the trespass as established by the evidence presented to you in court."
The only point raised, with respect to damages, in the brief and upon the argument of the defendants Serpico is that "the trial court erred in permitting evidence of replacement cost in excess of the loss of value of the realty after the cutting." It may be observed, preliminarily, that *343 we cannot find any objection made to the evidence as adduced which was clearly and distinctly based upon the argument now presented. It was the position of the defendants, rather, that the plaintiffs should not be permitted to submit evidence as to damages on inconsistent or duplicative bases. That objection, in our judgment, was substantially covered by the charge of the court wherein it was made clear to the jury that it might not allow damages based upon the value of the trees both as shade trees and as timber, or upon either of these over and above any diminution of the value of the property, if it chose to approach the matter of damages in that manner. However, a liberal treatment of the objections made at the trial to plaintiffs' proofs might perhaps justify considering that the contention being urged was that the trees had a value only as timber and not as shade trees. Considering the objection in that light, it is our view that a jury issue was presented. While the testimony in respect of the shade or ornamental character of the trees adduced on behalf of plaintiffs was not extensive, we nevertheless think a jury could have inferred therefrom that the wooded area as a whole did possess a peculiar aesthetic and ornamental quality insofar as plaintiffs' enjoyment of it was concerned, which should preclude the limitation of damages consequent upon the destruction of the trees to their mere value as commercial timber.
The major thrust of defendants' argument on appeal, however, is that the jury should not have been allowed to consider any evidence of value which would permit a verdict in excess of the diminution of value of the realty after the cutting. The nature of the objections offered by defense counsel to the testimony as to damages at the trial affords no basis for this contention. It is fundamental that objections to testimony must distinctly point out the objectionable nature of the proffered evidence in order to be availed of on appeal. R.R. 4:47; Burke v. Lincoln Transit Co., 37 N.J. Super. 433 (App. Div. 1955). It *344 may be noted, moreover, that the request to charge submitted by defendants, which was refused by the trial court and to which exception was taken, posed as a criterion, not the diminution in the value of the property, but rather the full value of the land prior to the trespass. Nevertheless, in the interest of an inquiry as to whether the verdict as returned could have been substantially unjust because not grounded in correct conceptions as to the basic law of damages in this context, we will briefly consider the merits of the contention.
It is true that there are expressions in our cases to the effect that in determining damages consequent upon a trespass of land, absent the element of punitive damages, the controlling criterion is the difference between the value of the property before and after the trespass. Manda v. Orange, 77 N.J.L. 285 (Sup. Ct. 1909); Barberi v. Bochinsky, 43 N.J. Super. 186 (App. Div. 1956); cf. Busche v. N.Y., S. & W.R.R. Co., 10 N.J. Misc. 511, 513-14, 159 A. 789 (Sup. Ct. 1932). Moreover, while it has sometimes been stated that although the cost of restoration of the property to its prior condition is admissible in lieu of direct evidence as to diminution of value, damages may not be allowed for such restoration in excess of the amount of diminution, Barberi v. Bochinsky, supra, at p. 191, we find no decision in this State expressly so holding in a case where it was shown that trees destroyed by a defendant trespasser possessed shade or aesthetic value to the owner not fairly compensable by allowance of the difference in the "before and after" value of the freehold. Wyckoff v. Bodine, 65 N.J.L. 95 (Sup. Ct. 1900); Dawson v. Amey, 13 A. 667 (N.J. Ch. 1888) (not officially reported), and Hollister v. Ruddy, 66 N.J.L. 68 (Sup. Ct. 1901), involved only timber woodland. Busche v. N.Y., S. & W.R.R. Co., supra, assumed, arguendo, the above-stated rule but did not purport to adopt it. In Manda v. Orange, supra, the court stated (at p. 286):
*345 "Whether or not the diminution in value is in every case to be regarded as the measure of damages is a question which we need not now decide." (Emphasis added)
We do not regard condemnation cases as fairly analogous or controlling in this field since these concern the obligation of the sovereign acting under legislative authority. Cf. Tennessee Gas Transmission Co. v. Maze, 45 N.J. Super. 496 (App. Div. 1957). Trespass, on the contrary, is a remedy between private parties, and thus a rule rather calculated fully to make whole the wronged suitor should be entertained.
Sound principle and persuasive authority support the allowance to an aggrieved landowner of the fair cost of restoring his land to a reasonable approximation of its former condition, without necessary limitation to the diminution in the market value of the land, where a trespasser has destroyed shade or ornamental trees or shrubbery having peculiar value to the owner. See Restatement, Torts, sec. 929, comment (b), pp. 661-662 (1939); Annotation, 161 A.L.R. 549, 601-602 (1946); Samson Construction Company v. Brusowankin, 218 Md. 458, 147 A.2d 430, 69 A.L.R.2d 1326 (Ct. App. 1958). The last cited case is a particularly apposite and well considered opinion, with a full collation of the authorities. The plaintiffs there sued for the negligent destruction, by a trespassing developer, of trees growing on homesites. The evidence was that the trees imparted an appreciable element of beautification to the land for purposes of a homesite, and were so regarded by the plaintiffs. While recognizing that where ornamental trees are destroyed by a wrongdoer a proper or a permissible measure of damages is the diminution in the value of the land, the court stated that this was not an invariable criterion and that in appropriate circumstances the damages might be "the value of the trees or the reasonable cost of a reasonable restoration of the property as it was before the wrong." (147 A.2d, at p. 435.) The court went on to say (id., at pp. 435-436):
*346 "A number of cases have held directly, or in effect, that `An owner of real estate has a right to enjoy it according to his own taste and wishes, and the arrangement of buildings, shade trees, fruit trees, and the like may be very important to him * * * and the modification thereof may be an injury to his convenience and comfort in the use of his premises which fairly ought to be substantially compensated, and yet * * * the disturbance of that arrangement, therefore, might not impair the general market value. * * * The owner of property has a right to hold it for his own use as well as to hold it for sale, and if he has elected the former he should be compensated for an injury wrongfully done him in that respect, although that injury might be unappreciable to one holding the same premises for purposes of sale.' Gilman v. Brown, 115 Wis. 1, 91 N.W. 227, 229. Some of the cases that have agreed in their holdings with the language just quoted are listed below."
Citing among other cases, Watson v. Jones, 160 Fla. 819, 36 So.2d 788 (Sup. Ct. 1948); Eldridge v. Gorman, 77 Conn. 699, 60 A. 643 (Sup. Ct. Err. 1905); Hoyt v. Southern New England Tel. Co., 60 Conn. 385, 22 A. 957, 958 (Sup. Ct. Err. 1891); City of New Orleans v. Shreveport Oil Co., 170 La. 432, 128 So. 35 (Sup. Ct. 1930); Louisville & Nashville R. Co. v. Beeler, 126 Ky. 328, 103 S.W. 300, 302, 11 L.R.A.N.S., 930 (Ct. App. 1907); Barker v. Publishers' Paper Co., 78 N. II. 571, 103 A. 757, 759, L.R.A. 1918E., 709 (Sup. Ct. 1918).
The decision cited, and those relied on therein, stress that in this area the cardinal principles are flexibility of approach and full compensation to the owner, within the overall limitation of reasonableness. Cf. 525 Main Street Corp. v. Eagle Roofing Co., 34 N.J. 251, 254 (1961). These principles have our approval. We do not regard the result in the case before us as violative thereof.
The testimony as to diminution of the value of the rear portion of the property was not controlling here since the property was held and enjoyed by the plaintiffs as an entire 14 1/2-acre homesite. There was no proof as to diminution in value or the absence thereof in relation to the tract as a whole. While testimony as to the restoration of trees on the basis of a cost of $2,100 per tree did *347 not reflect a reasonable restoration of the premises, its admission was harmless since the verdict does not appear to be founded thereon. The $6,500 allowed as damages may well have been based upon the experts' estimate of the cost of a reasonable restoration of the land at $5,000 plus either of the two figures given for removal of the debris, plus minor incidental expenses or losses. We thus find no substantial injustice in the verdict and judgment entered below.
Judgment affirmed.