7 A.3d 803 (2010)
416 N.J. Super. 632
Kyle J. MOSTELLER, Plaintiff-Appellant,
v.
Geela NAIMAN, Defendant-Respondent, and
Coyne Tree Service, Inc., Defendant.
No. A-2546-09T2.
Superior Court of New Jersey, Appellate Division.
Argued October 25, 2010.
Decided December 3, 2010.
*804 Randi S. Greenberg argued the cause for appellant (J. Stewart Grad, Woodbridge, attorney; Ms. Greenberg, on the brief).
Frank J. Caruso, Brunswick, argued the cause for respondent (Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys; Mr. Caruso, of counsel and on the brief).
Before Judges LISA, REISNER,[1] and SABATINO.
The opinion of the court was delivered by
SABATINO, J.A.D.
The sole issue in this appeal is whether the trial court applied an appropriate measure of damages to defendant's unauthorized removal of six mature trees from rental property owned by plaintiff. We conclude that the trial court correctly adopted a diminution-of-market-value approach, and therefore affirm its decision.
Plaintiff Kyle J. Mosteller resides in Virginia. He has resided there at all times relevant to this litigation. Several years ago, plaintiff purchased various rental properties in Highland Park, including the *805 subject property, which he bought in 2004 for approximately $440,000. The property has a yard and is located in a residential neighborhood. The property contains two rental units, which were both leased and occupied at the time in question. Plaintiff has never resided there himself; his residence in Virginia is approximately four or five hours away by car.
Defendant Geela Naiman owns a dwelling on a lot that adjoins the subject property. The properties are separated by a chain link fence. In July 2005, defendant hired a company, co-defendant Coyne Tree Service, Inc. ("Coyne"), to remove several trees on what she believed to be her side of the property line. The trees were removed without plaintiff's advance knowledge or permission.[2] The tree service left stumps where the trees had previously been, along with wood chips and other debris.
After being informed by another neighbor that the trees had been cut down, plaintiff commissioned a survey of the property boundary. The survey revealed that the chain link fence did not correspond to the true boundary, and that six of the removed trees had been located on plaintiff's side of the property line. According to plaintiff, the six trees were all mature and had appeared to be healthy, ranging in height from thirty to sixty-five feet.[3]
Plaintiff filed a civil action in the Law Division against defendant and Coyne,[4] seeking damages for the wrongful removal of the six trees. According to plaintiff, the removal of the trees damaged his property in several respects. He contends that his lot is now less private and not as attractive. He further alleges that the destruction of the trees has increased the risks of erosion from wind and rain, and the potential for insect infestation of the tree stumps. In addition, the loss of shade from the trees has produced brown spots on plaintiff's lawn.
Plaintiff tendered to defendant an estimate he obtained from a landscaping company for removal of the stumps, repair of certain fencing and railroad ties damaged by Coyne, and replacement of the destroyed trees with six replacement trees. The estimate called for six maples, varying in height, which would be transported to the property and planted there. The most expensive of those trees, as installed, was priced at $130,000. The estimate also included the costs of soil and mulch, reseeding the lawn, cleanup, insurance, and one year of watering and weekly maintenance. The total sum sought in the estimate was $436,750.
After discovery had been conducted, defendant filed a motion requesting the trial court to establish the proper legal measure of damages to be applied in this case. Defendant contended that the appropriate measure of damages would be the difference between the estimated fair market value of plaintiff's property before the trees were removed and after they were removed.[5] Defendant further argued that *806 plaintiff had established no "peculiar value" in the lost trees that might justify a replacement value approach. Plaintiff, meanwhile, advocated that he should be awarded the full replacement costs of the trees, regardless of the market-value impact of the tree removal. He filed a cross-motion requesting the trial court to adopt a replacement value measure of damages.
Following oral argument, the motion judge issued an oral opinion adopting defendant's proposed method of quantifying damages and rejecting plaintiff's competing approach. The judge entered a corresponding order on April 25, 2008, declaring that "the measurement of plaintiff's damages [at trial] will be the diminution in value of plaintiff's property with and without the removed trees[,]" and that "plaintiff's cross-motion is denied."
Thereafter, on January 4, 2010, the parties entered into a provisional consent judgment in the amount of $20,000. In the order entering the consent judgment, plaintiff specifically reserved the right to appeal the trial court's April 25, 2008 order setting the measure of damages as the diminution in value of plaintiff's property. Plaintiff also reserved the right to vacate the consent judgment if his appeal were successful.[6]
This appeal ensued. Plaintiff argues that he is entitled to be made whole for the damage to his property, and that the motion judge's ruling falls short of that objective. He argues that the judge should have adopted a replacement-cost method to quantify his damages. Although he disputes the legal necessity of proving "peculiar value" in order to be awarded replacement costs, he contends that the record establishes such peculiar value. Lastly, plaintiff argues that even if a diminution-of-market-value approach is proper to use in this case, he nonetheless should be permitted to present his replacement-cost proofs for comparative purposes at trial.
In considering these arguments, we review de novo the trial court's legal determination as to the appropriate measure of damages. See Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995) (prescribing de novo review of trial court rulings on questions of law). Having done so, we are satisfied that the trial court's decision was legally sound, substantially for the reasons cogently articulated in Judge Andrea Carter Latimer's bench opinion of April 25, 2008. We echo her analysis in the following comments.
"The appropriate measure of damages for injury done to land is a complex subject" and depends "upon the evidence in the particular case." Velop, Inc. v. Kaplan, 301 N.J.Super. 32, 64, 693 A.2d 917 (App.Div.), certif. granted, 152 N.J. 9, 702 A.2d 348 (1997), appeal dismissed, 153 N.J. 45, 707 A.2d 149 (1998) (citing Dobbs, Remedies, § 5.2 to 5.16 at 310-34 (1973)). In almost every case, one of two measures is employed. The first measure, which has been described as "the one most commonly mentioned in the [reported] opinions," is the diminution-of-value measure:
Under this measure the plaintiff is entitled to recover the difference in the value of his property immediately before and immediately after the injury to it, that [is], the amount his property has *807 diminished in value as a result of the injury.
[Ibid. (quoting Dobbs, supra, at 312) (emphasis added).]
A second measure is the replacement-cost or restoration-cost measure. That alternative "awards the plaintiff the reasonable cost of restoring or repairing the damage." Ibid. "Each of these tests has a wide sphere of application, and the court's selection of one test or the other is basically an assessment of which is more likely to afford full and reasonable compensation." Ibid. (emphasis added).
We have recognized that in choosing between these two methods of quantifying property damages, it can be unfair to use the restoration-cost method when "the cost of repairs vastly exceeds ... the probable market value of the property." Correa v. Maggiore, 196 N.J.Super. 273, 285, 482 A.2d 192 (App.Div.1984). In Correa, the jury awarded $33,000 in repair costs with respect to a fraudulently-procured contract for the sale of a home for $25,000. Id. at 277-78, 482 A.2d 192. In reversing a judgment based on that jury award, we observed that "the cost of repairs approach should not be employed where ... it would result in unreasonable economic waste." Id. at 285, 482 A.2d 192 (internal quotation omitted). However, reasonable repair costs that exceed the diminution of the property's value are appropriate "in some circumstances[, such as] where the property owner wishes to use the property rather than sell it." Velop, Inc., supra, 301 N.J.Super. at 64, 693 A.2d 917 (citing Dobbs, supra, at 317).
The predominant measure of damages in cases involving the destruction or removal of trees and ornamental shrubs is the diminution-of-market-value measure. Although various other measures have been applied by courts, the law is not rigid and "ordinarily the measure of damages is the resulting depreciation in the value of the land on which the trees or shrubs stood." Kristine Cordier Karnezis, Annotation, Measure of Damages for Injury to or Destruction of Shade or Ornamental Tree or Shrub, 95 A.L.R.3d 508, § 2 (2008). "In explaining their adherence to this view, the courts typically reason that such trees are ordinarily not marketable commodities whose value can thus be measured, but that their value principally inheres in what they impart to the realty on which they stand." Ibid.
As the motion judge recognized, the leading case in our state concerning the measurement of damages arising out of the tortious removal of trees is Huber v. Serpico, 71 N.J.Super. 329, 176 A.2d 805 (App.Div.1962). In Huber, the plaintiffs owned a fourteen-and-a-half acre tract of land that contained their residence and outbuildings. The tract also contained a yard, pasturage, and a grove of seventy-year-old to eighty-five-year-old trees. The land was used by the plaintiffs for the purposes of enjoyment and recreation. While the plaintiffs were away on vacation, the defendant entered the tract of land, cut down the grove of trees, and removed the salable wood. In those particular circumstances, we held that a restoration-cost approach was the fairest method of quantifying the property owner's loss, because of the "peculiar value" of the trees to the owner:
Sound principle and persuasive authority support the allowance to an aggrieved landowner of the fair cost of restoring his land to a reasonable approximation of its former condition, without necessary limitation to the diminution in the market value of the land, where a trespasser has destroyed shade or ornamental trees or shrubbery having peculiar value to the owner.

[Id. at 345, 176 A.2d 805.]
*808 In adopting that "peculiar value" distinction in Huber, we looked to a Maryland decision, Samson Construction Company v. Brusowankin, 218 Md. 458, 147 A.2d 430 (1958). Huber, supra, 71 N.J.Super. at 345-46, 176 A.2d 805. Samson involved plaintiffs who sued for damages caused by the negligent destruction of trees on their home sites by a trespassing real estate developer. Samson, supra, 147 A.2d at 432-33. The evidence demonstrated that the trees had imparted an appreciable element of beautification to the home sites, and were so regarded by the plaintiffs. Given the special importance of the trees to the property owners, the court in Samson found it proper to award them damages representing "the value of the trees or the reasonable cost of a reasonable restoration of the property as it was before the wrong." Id. at 435. As the court noted, such reasonable costs of restoration, even if they exceed the diminution in the market value of the property, may be warranted where the "arrangement of buildings, shade trees, fruit trees, and the like may be very important to [the owner] ... and the modification thereof may be an injury to his convenience and comfort in the use of his premises which fairly ought to be substantially compensated[.]" Ibid. (quoting Gilman v. Brown, 115 Wis. 1, 91 N.W. 227, 229 (1902)) (emphasis added).
Consequently, the costs of restoring land to its original condition may be appropriate in special instances where the land has peculiar value to the owner. However, this approach should not be applied mechanically. 525 Main Street Corp. v. Eagle Roofing Co., 34 N.J. 251, 255, 168 A.2d 33 (1961). As we noted in Huber, and as Samson and other related cases have also recognized, the "cardinal principles are flexibility of approach and full compensation to the owner, within the overall limitation of reasonableness." Huber, supra, 71 N.J.Super. at 346, 176 A.2d 805.
Plaintiff argues that it is unfair to require him, as an absentee landlord, to demonstrate peculiar value to recover his anticipated tree restoration costs, and that, in any event, he has made such a showing. The motion judge was not persuaded by these contentions, and neither are we. Peculiar value to the owner is a fair and equitable consideration in deciding whether to enhance an owner's recovery beyond the diminution of the property's value, and we see no reason to repudiate that pivotal consideration identified in Huber.
We are mindful that plaintiff, because he does not reside at the property, has a more difficult burden in proving that the trees were of peculiar or special importance to him. We are not holding that an absentee owner or a corporate owner can never establish such peculiar value. Each case is fact-sensitive. The facts here do not support the alternative measure of damages. Moreover, plaintiff conceded at his deposition that none of his tenants complained about the removal of the trees. When one of those tenants left at the end of the lease term, plaintiff readily found another tenant, without needing to reduce the rent because the premises had become less attractive or enjoyable.
We also concur with the motion judge that the assorted items of damage cited by plaintiff, including the loss of shade, the increased erosion and insect risks, and so on, did not rise to the level of a special harm that warranted a departure from the diminution-of-market-value test. These are typical negative consequences that unfortunately result from the destruction of trees and shrubbery, and they do not establish that plaintiff's trees were of peculiar value to him. They provide no special justification for a more generous measure of damages in this case.
*809 The enormity of the anticipated replacement costs, as set forth in the estimate from plaintiff's landscaper, also weighs against using that figure as a fair measure of damages. That estimate, which approaches a half million dollars, is almost equal to what plaintiff paid for the entire property, including the land and the two-unit dwelling. As we have noted, damages must be calculated in a manner that is subject to "the overall limitation of reasonableness." Huber, supra, 71 N.J.Super. at 346, 176 A.2d 805.
Although we appreciate that it could be expensive to obtain six mature trees of comparable height, transport them to the property, and plant them there securely, the motion judge sensibly declined to foist those enormous costs upon defendants, particularly where the market impact of the loss of the trees was modest and perhaps even negligible. The judge reasonably avoided the creation of economic waste, in the absence of a showing that the fallen trees had a peculiar value to the owner justifying such a huge expenditure.
Plaintiff argues that limiting his damages to the diminution of market value is contrary to public policy because it would encourage wrongdoers to engage in the tortious removal of trees on another person's land. In making this policy argument, plaintiff illustratively relies on Ritter v. Bergmann, 72 Mass.App.Ct. 296, 891 N.E.2d 248 (2008), a case where the court found that restoration damages were an appropriate measure to compensate for the illegal clearing of trees.
The circumstances in Ritter are very different from the instant case. In Ritter, the defendants cleared trees on the plaintiff's property "willfully, and without ... having good reason to believe that the land was theirs." Ibid. at 251. In light of the fact that the value of the removed timber or the diminution in value to the plaintiff's land would only provide minimal compensation at best, the court in Ritter held that a more substantial measure of damages, i.e., replacement costs, was necessary to deter such patent wrongdoing. Id. at 251-52.
Here, there is no evidence that defendant's clearing of plaintiff's trees involved a similar venal intent, nor is there evidence that defendant knew the trees were on plaintiff's property. To the contrary, the trees stood behind a chain-link fence and a retaining wall that could reasonably have been thought to demarcate the true property line. Hence, the need to deter deliberate wrongdoing or reckless behavior with a harsh remedy is not present in this case.
Plaintiff's remaining arguments lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).
In sum, although we recognize the abundant benefits that trees provide to our world in general,[7] we are satisfied that the trial court applied a fair and appropriate measure of damages in this particular case.
Affirmed.
NOTES
[1] Judge Reisner did not participate in oral argument, but has been added to the opinion with consent of both counsel. See R. 2:13-2(b).
[2] Evidently, at that time, plaintiff was also unaware that the six trees were rooted on his side of the property line.
[3] The species of the removed trees is not established in the record, although we note that plaintiff proposed replacing them with maples.
[4] Plaintiff's brief represents that Coyne has been in default throughout the litigation.
[5] No real estate appraisals or market analyses are contained in the appellate record. However, the motion transcript indicates that defendant's counsel apparently supplied plaintiff's counsel with an expert report, which estimated that the diminution in the property's market value from the removal of the trees ranged from zero to $20,000.
[6] Plaintiff has limited his appellate arguments to his asserted right to recover the replacement costs of the trees, thereby waiving any possible claim for additional damages for the cost of removing the stumps and other repair work.
[7] See Joyce Kilmer, Trees, (1913), in Trees and Other Poems 19 (1914).