SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

### Joseph Kornbleuth, DMD v. Thomas Westover (A-71-18) (081898)

**Argued November 6, 2019 -- Decided March 11, 2020**

**SOLOMON, J., writing for the Court.**

The Court reviews for abuse of discretion two rulings by the trial court in this action brought by plaintiffs Joseph and Donna Kornbleuth against their neighbors, defendants Thomas and Betsy Westover, after bamboo was removed from the Kornbleuths' property by contractors hired by the Westovers. Specifically, the Court considers the imposition of sanctions under Rule 1:2-4 and the denial of the Kornbleuths' motion for reconsideration of the grant of summary judgment in favor of the Westovers.

Bamboo from the barrier that divided the parties' rear yards spread to the Westovers' property. When neither the Kornbleuths nor the Westovers were home, contractors hired by the Westovers removed all the bamboo from both properties.

The Kornbleuths filed a complaint against the Westovers for trespass and conversion, describing what was lost as a "bamboo fence" providing privacy and infrequently characterizing it as something of aesthetic significance to them. The Kornbleuths submitted expert reports projecting bamboo restoration costs of between about $17,000 and $41,000. Neither those reports nor any other evidence provided information about the market value of the Kornbleuths' property or the diminution in that property's value as a result of the removal of the bamboo fence.

On the day trial was scheduled to begin, the Kornbleuths' designated trial counsel requested a continuance because neither his "indispensable 'second chair'" nor his "Courtroom IT Assistant" were able to be present at the trial. The trial court offered its own IT staff, but counsel refused to begin trial the following day and instead moved for an adjournment. The judge denied the motion and dismissed the matter without prejudice. The trial court later reinstated the complaint and sanctioned the Kornbleuths in the amount of $8500 to compensate the Westovers for costs incurred by the delay.

The Westovers moved for summary judgment. The Kornbleuths conceded that they had not produced evidence of diminution in value but argued their expert's reports supported their elected remedy of restoration costs. The trial judge granted the Westovers' motion and denied the Kornbleuths' subsequent motion for reconsideration.

1

The Kornbleuths appealed. The Appellate Division first found no abuse of the trial court's considerable discretion in imposing sanctions, given that plaintiffs' designated trial attorney refused to begin trial even though he was present and the court offered to lend him IT support. Next, regarding the denial of reconsideration of the summary judgment order, the Appellate Division held the trial court did not abuse its discretion in denying the motion because plaintiffs failed to demonstrate that the decision was palpably incorrect.

The Court granted the Kornbleuths' petition for certification. 237 N.J. 561 (2019).

**HELD:** There was no abuse of discretion with respect to either the imposition of sanctions or the denial of reconsideration.

1. New Jersey's Court Rules provide the framework for imposing sanctions for failure to appear for trial, and Rule 1:2-4(a) considers refusal to proceed on the day of trial a failure to appear, notwithstanding an accompanying motion to adjourn. Here, the Kornbleuths' designated trial counsel made an adjournment motion because he did not have the assistance of his associate and his own IT support. Plaintiffs' choice of designated trial counsel is an important consideration. Absent exceptional circumstances, parties are entitled to have their designated trial counsel represent them at trial. R. 4:25-4. However, parties are not entitled to have other members of the trial team present to help that designee at trial if doing so would delay proceedings. The judge appropriately exercised discretion in denying adjournment and imposing sanctions. (pp. 9-12)

2. Section 929 of the Restatement (Second) of Torts (Restatement) provides the framework for determining plaintiffs' damages for trespass to land. The Restatement contemplates two possible damages valuations under section 929(1)(a): (1) if the cost of restoring the land to its original condition is not proportionate to the diminution in the value of the land and there is no reason personal to the owner for restoring it to its original condition, damages are limited to the diminution in value; and (2) if the cost of restoring the land to its original condition is not proportionate to the diminution in the value of the land but there is a reason personal to the owner for restoring the land, damages are not limited to the diminution in the value of the land. Of relevance to this appeal is that the Restatement limits the damages recoverable for trespass to land when there is no reason personal to the owner for restoring the property to its original condition. (pp. 12-15)

3. The Appellate Division considered diminution of value and restoration costs as compensation for trespassory tree removal in Mosteller v. Naiman, 416 N.J. Super. 632 (App. Div. 2010), and Huber v. Serpico, 71 N.J. Super. 329 (App. Div. 1962). The Appellate Division in Huber applied the second alternative for assessing damages under Restatement section 929(1)(a) -- if the cost of restoring the land to its original condition is not proportionate to the diminution in the value of the land but there is a reason

2

personal to the owner for restoring the land, reasonable damages are not limited to the diminution in value.  Huber, 71 N.J. Super. at 345.  Nevertheless, the court found the touchstone to be reasonableness.  Id. at 346.  Significantly, the almost sixty-year-old decision in Huber is the only one in this State's history to find that trees or shrubbery had "peculiar value" justifying restoration costs in excess of diminution of value in the context of a trespass or conversion claim.  In contrast, New Jersey cases have historically rejected claims that certain foliage had peculiar value warranting damages for trespass beyond diminution in value.  Mosteller is the most recent case rejecting a claim premised on the peculiar value of certain trees.  416 N.J. Super. at 634-35.  The court concluded the enormity of the cost to replace the lost trees unreasonably outweighed the "perhaps even negligible" diminution of the property's market value.  Id. at 641-42.  (pp. 15-19)

4.  Here, the Kornbleuths never alleged or offered evidence of any losses incident to removal of the bamboo or sought to prove diminution of value damages.  They instead claim the nature of the damages sought here -- restoration costs -- is an election available to the aggrieved party in a claim for trespass to land.  However, whether restoration costs may be recovered is not an election of the aggrieved party but is dependent upon a showing that such damages are reasonable.  A general interest in privacy and vague assertions of the aesthetic worth of bamboo as opposed to any other natural barrier do not establish value personal to the owner.  Additionally, even if the Kornbleuths presented legally sufficient evidence of peculiar value, proportionality and reasonableness of restoration costs could not be determined without evidence of diminished value or some similarly helpful yardstick for comparison.  The trial court did not abuse its discretion in refusing to reconsider its order granting summary judgment to defendants.  (pp. 20-24)

**The judgment of the Appellate Division is AFFIRMED.**

**JUSTICE LaVECCHIA, dissenting,** expresses the view that the majority's decision overextends the holdings and reasoning of Mosteller and Huber, altering New Jersey law and making it less protective of residential property owners.  Although plaintiffs no doubt bear the ultimate burden when seeking compensatory damages in a harm-to-land case based on invasion, Justice LaVecchia explains, they should not be compelled to produce evidence of diminution in value of the entirety of the property in order to get before the factfinder; rather, they should be permitted to proceed with evidence of restoration damages for the trees destroyed.  Justice LaVecchia adds that the factfinder would determine the reasonableness of the claimed compensatory damages.  In Justice LaVecchia's view, based on their allegations, plaintiffs presented a claim for which nominal damages are presumed under settled law of trespass and also presented a prima facie claim for reasonable damages for the alleged destruction of the bamboo.

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON and FERNANDEZ-VINA join in JUSTICE SOLOMON'S opinion.  JUSTICE LaVECCHIA filed a dissent, in which JUSTICES ALBIN and TIMPONE join.**

SUPREME COURT OF NEW JERSEY
A-71 September Term 2018
081898

Joseph Kornbleuth, DMD,
and Donna Kornbleuth,
husband and wife,

Plaintiffs-Appellants,

v.

Thomas Westover and Betsy
Westover, husband and wife,

Defendants-Respondents,

and

New Jersey Bamboo Landscaping,
LLC, and Alexander Betz,

Defendants.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| November 6, 2019 | March 11, 2020 |

I. Michael Heine argued the cause for appellants (Heine
Associates, attorneys; I. Michael Heine, on the briefs).

William J. Martin argued the cause for respondents
(Martin Gunn & Martin, attorneys; William J. Martin and
Michael A. Mascino, on the brief).

Contractors hired by defendants Thomas and Betsy Westover removed bamboo not only from the Westovers' property but also from that of their neighbors, plaintiffs Joseph and Donna Kornbleuth. The Kornbleuths filed a complaint against the Westovers for trespass and conversion. The trial court dismissed their complaint when, on the eve of trial, their designated trial attorney refused to proceed because his second-chair and information technology (IT) assistant unexpectedly became unavailable. The trial court ultimately granted the Kornbleuths' motion to reinstate their complaint but imposed sanctions under Rule 1:2-4.

Later, the trial court granted the Westovers' motion for summary judgment, finding plaintiffs failed to offer evidence necessary to support their claim for damages. The trial court denied the Kornbleuths' motion to reconsider the grant of summary judgment. The Appellate Division affirmed both the trial court's imposition of sanctions and denial of reconsideration.

We first review for abuse of discretion the trial court's imposition of sanctions under Rule 1:2-4. Next, we determine whether the trial court abused its discretion by refusing to reconsider its grant of summary judgment in favor of the Westovers. For the reasons that follow, we hold there was no abuse of

discretion with respect to either issue and affirm the judgment of the Appellate Division.

## I.

The trial court record reveals the following facts.

Plaintiffs Joseph and Donna Kornbleuth's rear property line is contiguous to that of defendants Thomas and Betsy Westover. Their shared property line is approximately one hundred feet long and was marked by a bamboo barrier twenty feet tall by thirty feet wide. That "bamboo fence" provided the Kornbleuths "complete visual privacy" from the Westovers.

Over time, bamboo spread to the Westovers' property. The Westovers requested the Kornbleuths' permission to have contractors remove all bamboo from both properties and replace it with a less invasive natural barrier. The Kornbleuths refused permission. Later, when neither the Kornbleuths nor the Westovers were home, contractors hired by the Westovers removed all the bamboo from both properties.[1]

---

[1] The record is unclear as to whether the Westovers instructed the contractors (against whom the Kornbleuths settled their claims) to remove all bamboo from both properties or only the bamboo growing on the Westovers' property.

3

The Kornbleuths filed a complaint against the Westovers for trespass and conversion, arguing that removal of the bamboo interfered with their privacy and aesthetic interests. Afterwards, the parties conducted discovery.

In her deposition, Donna Kornbleuth explained that "we had privacy from the Westovers . . . otherwise I would never buy a house looking at their house." Throughout discovery, the Kornbleuths regularly described what was lost as a "bamboo fence" providing privacy, and infrequently characterized it as something of aesthetic significance to them.[2]

The Kornbleuths submitted expert reports by a landscape architect projecting bamboo restoration costs of between about $17,000 and $41,000.[3] Neither the landscape architect's reports nor any other evidence provided information about the market value of the Kornbleuths' property or the

---

[2] Notably, as the Westovers point out and the Kornbleuths have not denied, in their conversations with the landscape architect the Kornbleuths discussed a range of options to replace the lost bamboo fence, including alternatives to bamboo.

[3] The landscape architect's May 2015 report projected restoration costs of $16,967, his September 2015 report projected restoration costs of $21,363, and his November 2015 report projected restoration costs of $41,032. The range of these estimates is due in part to the fact that only the November 2015 report includes a complete estimate for the cost of installing an underground root barrier to prevent the bamboo from spreading to other properties in the future. The Westovers argued below that the November 2015 report was untimely, but the Kornbleuths pointed out that the Westovers failed to file the proper motion when challenging that report. Neither party addresses the issue in briefs to this Court.

diminution in that property's value as a result of the removal of the bamboo fence.

On the day trial was scheduled to begin, the Kornbleuths' designated trial counsel requested a continuance because his "indispensable 'second chair' [was] medically incapacitated with flu/fever" and his "Courtroom IT Assistant (also indispensable to Plaintiff's trial team) had admitted both senior parents to the hospital" and would likewise be unavailable to assist at trial. The trial court offered its own IT staff to "do whatever [they] could" to satisfy counsel's IT needs, but counsel nonetheless refused to begin trial the following day and instead moved for an adjournment. The judge denied the motion to adjourn the trial and dismissed the matter without prejudice, emphasizing the designation of trial counsel, and noting that "I've never seen anyone adjourn a case because of the unavailability of support staff." After the trial court granted counsel's motion to reinstate the complaint, it sanctioned the Kornbleuths in the amount of $8500[4] to compensate defendants for costs incurred by the delay.

Upon the conclusion of discovery, the Westovers moved for summary judgment, arguing the Kornbleuths failed to produce evidence of the

---

[4] The Kornbleuths have never challenged the reasonableness of the sum imposed as a sanction; instead they challenge the underlying decision to impose sanctions.

diminution in their property's value as a consequence of the bamboo's removal. The Kornbleuths conceded that they had not produced evidence of diminution in value but argued their expert's reports supported their elected remedy of restoration costs. The trial judge granted the Westovers' motion and dismissed the Kornbleuths' claims with prejudice. Specifically, the court held "the appropriate value is under . . . diminution. And there's been no evidence . . . of that. [The Kornbleuths have] failed to raise any genuine issue of material fact that there was some peculiar value as to the specific type of bamboo that was lost." The court denied the Kornbleuths' subsequent motion for reconsideration.

The Kornbleuths appealed only the denial of their motion for reconsideration. Nevertheless, because the Kornbleuths also submitted copies of the transcripts from the hearings on both their motion to adjourn and their motion for reconsideration, the Appellate Division treated the appeal "indulgently" and addressed not just the denial of reconsideration but also the scheduling and sanctions issue.

The Appellate Division first found no abuse of the trial court's considerable discretion in imposing sanctions, given that plaintiffs' designated trial attorney refused to begin trial even though he was present and the court offered to lend him IT support. Next, regarding the denial of reconsideration

6

of the summary judgment order, the Appellate Division held the trial court did not abuse its discretion in denying the motion because plaintiffs failed to demonstrate that the decision was palpably incorrect. In doing so, the Appellate Division found there is authority to support the trial court's conclusion that the Kornbleuths' evidence on damages was inadequate as a matter of law.

We granted the Kornbleuths' petition for certification. 237 N.J. 561 (2019).

## II.

The Kornbleuths assert here that the trial court's denial of their adjournment motion, dismissal of the complaint, and imposition of sanctions upon reinstatement was an abuse of discretion. They also claim the trial court's denial of their motion for reconsideration was an abuse of discretion.

The Kornbleuths argue, as they did before the Appellate Division, that because they live at the affected property and have not just an economic but also a privacy interest at stake, this case is more like Huber v. Serpico, 71 N.J. Super. 329 (App. Div. 1962) (awarding reasonable restoration costs where defendants removed approximately fifty mature trees with peculiar value to plaintiffs), than Mosteller v. Naiman, 416 N.J. Super. 632 (App. Div. 2010) (rejecting plaintiff's restoration cost claim because plaintiff was non-resident

7

landlord and failed to establish peculiar value). As such, they contend that their elected remedy of restoration costs provides the appropriate measure for recovery because they provided expert reports on restoration costs and deposition testimony on how the lost bamboo fence was of peculiar value to them.

The Westovers argue that because the Kornbleuths' expert's reports addressed only the cost of replacing the bamboo and failed to estimate diminution of market value consequent to its removal, they are unable to establish damages. The Westovers assert that the Kornbleuths gave no "special aesthetic parameters to achieve [their] goal of restoring the privacy of [their] backyard" and that Ms. Kornbleuths' statement that she did not want to see the Westovers' "ugly house" is evidence that the Kornbleuths cared only about the loss of privacy and there was no peculiar value of the bamboo to the Kornbleuths. The Westovers conclude that without "prov[ing] that the lost bamboo held a peculiar value," replacement costs cannot be recovered as a matter of law.

## III.

We begin our review of the two issues presented in this appeal by noting that we review "only the judgment or orders designated in the notice of appeal." 1266 Apartment Corp. v. New Horizon Deli, Inc., 368 N.J. Super.

456, 459 (App. Div. 2004). Indeed, the commentary to Rule 2:5-1 provides that "if the notice designates only the order entered on a motion for reconsideration, it is only that proceeding and not the order that generated the reconsideration motion that may be reviewed." Pressler & Verniero, Current N.J. Court Rules, cmt. 6.1 on R. 2:5-1(e)(1) (2020) (collecting cases).

Although plaintiffs' notice of appeal identified only the order denying their motion for reconsideration, the Appellate Division generously "address[ed] the two issues for which plaintiffs have provided the complete transcripts" -- their application to adjourn the trial, which led to the dismissal of their complaint, and the denial of their motion for reconsideration of the grant of summary judgment. We do the same.

IV.

We first dispose of the Kornbleuths' claim that the trial court abused its discretion by imposing sanctions pursuant to Rule 1:2-4. We do so recognizing that our Court Rules provide the framework for imposing sanctions for failure to appear for trial, and that Rule 1:2-4(a) considers refusal to proceed on the day of trial a failure to appear, notwithstanding an accompanying motion to adjourn:

> [I]f without just excuse . . . no appearance is made on behalf of a party . . . on the day of trial, or if an application is made for an adjournment, the court may order any one or more of the following: (a) the payment

9

by the delinquent attorney . . . of costs, in such amount as the court shall fix, . . . to the adverse party; (b) the payment . . . of the reasonable expenses, including attorney's fees, to the aggrieved party; (c) the dismissal of the complaint . . . ; or (d) such other action as it deems appropriate.

Here, the Kornbleuths' designated trial counsel made an adjournment motion because he did not have the assistance of his associate and his own IT support.

Plaintiffs' choice of designated trial counsel is an important consideration here. The designation of trial counsel is significant to the relationship among counsel, client, and court, and is administratively necessary for the smooth operation of this state's judiciary. As Rule 4:25-4 explains, "[c]ounsel shall, either in the first pleading or in a writing filed no later than ten days after the expiration of the discovery period, notify the court that designated counsel is to try the case, and set forth the name specifically." Absent exceptional circumstances, parties are entitled to have their designated trial counsel represent them at trial. R. 4:25-4. However, parties are not entitled to have other members of the trial team present to help that designee at trial if doing so would delay proceedings. See A Practitioner's Guide to New Jersey's Civil Court Procedures § 10(c) (2011), https://www.njcourts.gov/ attorneys/assets/appellate/practitionersguide.pdf (stating that, under Rule 4:25-4, "[n]o [d]esignation of [t]rial [c]o-[c]ounsel [is] [p]ermitted" because the rules permit "only one designated attorney per interested party").

10

Here, the Kornbleuths' designated trial counsel refused to proceed on the day of trial because he was not prepared to begin without the help of his second-chair and IT assistant. The court offered to lend counsel IT support, but counsel rejected the offer even though plaintiffs were not entitled to have other members of designated counsel's trial team present to help at trial. The court therefore dismissed the matter and imposed sanctions upon reinstating the complaint.

The decision to dismiss a case or sanction parties for failure to appear for trial falls within the discretion of the trial judge. Gonzalez v. Safe & Sound Sec., 185 N.J. 100, 115 (2005); see also State v. Hayes, 205 N.J. 522, 537 (2011) ("[A] motion for an adjournment is addressed to the discretion of the court, and its denial will not lead to reversal unless it appears from the record that the defendant suffered manifest wrong or injury." (quoting State v. Doro, 103 N.J.L. 88 (E. & A. 1926))). A court abuses that discretion when the decision to impose sanctions "is made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis." U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)).

The trial court's decision to dismiss the case without prejudice and impose monetary sanctions upon reinstatement was adequately and rationally

explained by the trial judge -- designated trial counsel failed to appear by refusing to begin trial even though he was personally available and sensible accommodations were offered. We repeat, parties are not entitled to have other members of the trial team present to help designated trial counsel if awaiting the availability of those individuals would delay proceedings. Accordingly, the judge appropriately exercised discretion in denying adjournment of the trial and imposing sanctions under Rule 1:2-4.

## V.

Next, we consider the trial court's refusal to reconsider its order granting summary judgment in favor of defendants. We do so mindful that

> a reconsideration motion is primarily an opportunity to seek to convince the court that either 1) it has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the court either did not consider, or failed to appreciate the significance of probative, competent evidence.
>
> [Guido v. Duane Morris LLP, 202 N.J. 79, 87-88 (2010) (internal quotation marks omitted).]

Our Court Rules permit reconsideration of a trial court's decision if the aggrieved party "state[s] with specificity the basis on which [the motion for reconsideration] is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred." R. 4:49-2.

12

We will not disturb the trial court's reconsideration decision "unless it represents a clear abuse of discretion." Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994); accord Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2014). "An abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Pitney Bowes Bank, 440 N.J. Super. at 382 (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

A.

We begin our analysis by considering section 929 of the Restatement (Second) of Torts, which provides the framework for determining plaintiffs' damages for trespass to land.

> (1) If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for
>
> > (a) the difference between the value of the land before the harm and the value after the harm, or at his election in an appropriate case, the cost of restoration that has been or may be reasonably incurred,
> >
> > (b) the loss of use of the land, and
> >
> > (c) discomfort and annoyance to him as an occupant.

13

[Restatement (Second) of Torts § 929(1) (Am. Law Inst. 1979) (emphasis added).][5]

The commentary to that section explains that

[i]f . . . the cost of replacing the land in its original condition is <u>disproportionate to the diminution in the value</u> of the land caused by the trespass, unless there is a <u>reason personal to the owner</u> for restoring the original condition, damages are measured only by the difference between the value of the land before and after the harm.

[Restatement (Second) of Torts § 929 cmt. b (emphases added).]

Thus, key to the Restatement's treatment of damages for trespass to land are the answers to the following two questions: first, whether the restoration costs are proportional to the diminution in property value caused by the trespass; and second, whether there is a peculiar value -- a "reason personal to the owner" -- for restoring the property.

The Restatement therefore contemplates two possible damages valuations under section 929(1)(a): (1) if the cost of restoring the land to its original condition is <u>not proportionate</u> to the diminution in the value of the

_____

[5] The Kornbleuths have not sought compensation for, nor alleged, any temporary loss of use consequent to removal of the bamboo. They have never expressed interest in or claimed damages for mere discomfort and annoyance beyond loss of privacy and have repeatedly and expressly denied that compensation based on diminution of value is appropriate. Accordingly, we limit our discussion and analysis to restoration costs as the measure of damages for trespass to land under section 929(1)(a).

land and there is no reason personal to the owner for restoring it to its original condition, damages are limited to the diminution in value; and (2) if the cost of restoring the land to its original condition is not proportionate to the diminution in the value of the land but there is a reason personal to the owner for restoring the land, damages are not limited to the diminution in the value of the land.

Of relevance to this appeal is that the Restatement limits the damages recoverable for trespass to land when there is no reason personal to the owner for restoring the property to its original condition. The Restatement commentary offers two examples of properties for which a reason personal to the owner might justify restoration costs that are disproportionate to the diminution in value: "a building such as a homestead [that] is used for a purpose personal to the owner" and a "garden [that] has been maintained in a city in connection with a dwelling house." Restatement (Second) of Torts § 929 cmt. b.

The Appellate Division considered diminution of value and restoration costs as compensation for trespassory tree removal in Mosteller and Huber. In both cases the parties offered evidence not just of restoration costs but also of other pertinent financial interests such as overall property value. See Huber, 71 N.J. Super. at 340-42; Mosteller, 416 N.J. Super. at 634-37. The courts in

both applied principles set forth in Restatement section 929(1)(a) in order to identify the proper method for calculating damages. See Huber, 71 N.J. Super. at 344-47 (relying on the 1939 edition of the Restatement); Mosteller, 416 N.J. Super. at 640-41. As Mosteller acknowledged, however, "'[t]he appropriate measure of damages for injury done to land is a complex subject' and depends 'upon the evidence in the particular case.'" 416 N.J. Super. at 638 (quoting Velop, Inc. v. Kaplan, 301 N.J. Super. 32, 64 (App. Div. 1997)). "[T]he court's selection of one test or the other [(diminution of value or restoration costs)] is basically an assessment of which is more likely to afford full and reasonable compensation." Ibid. (quoting Velop, 301 N.J. Super. at 64); see also id. at 640 ("[T]he cardinal principles are flexibility of approach and full compensation to the owner, within the overall limitation of reasonableness." (quoting Huber, 71 N.J. Super. at 346)).

The Appellate Division in Huber applied the second alternative for assessing damages under Restatement section 929(1)(a) -- if the cost of restoring the land to its original condition is not proportionate to the diminution in the value of the land but there is a reason personal to the owner for restoring the land, reasonable damages are not limited to the diminution in value. Huber, 71 N.J. Super. at 345. Nevertheless, the court found the touchstone to be reasonableness. Id. at 346.

16

The plaintiffs in Huber owned and occupied a fourteen-and-a-half-acre tract of land containing their home and outbuildings. Id. at 333. The tract also contained a pasture and a grove of seventy- to eighty-five-year-old trees, including red, white, and black oaks, as well as black birch, ash, and yellow poplar trees. Ibid. The plaintiffs used their land for enjoyment and recreation. Ibid. While the plaintiffs were away on vacation, the defendants entered their property and cut down some fifty trees from the grove. Id. at 332-33.

The plaintiffs presented evidence that restoration using mature trees would cost about $100,000, and "rehabilitation" using "3 saplings" would cost approximately $5000. Id. at 341. The plaintiffs also presented evidence of the property's approximately $20,000 value when purchased six years before the trespass, the value of the lost trees as shade trees ($2678), damages resulting from the loss of timber ($746.45), and other incidental damages ($1297). Id. at 340-41. The jury awarded plaintiffs $6500 and the defendants appealed. Id. at 346-47.

The Appellate Division affirmed the presentation to the jury of restoration costs and upheld the jury's award. Ibid. In doing so, the Appellate Division stated that restoration costs were a fair method of quantifying the loss because of the "peculiar value" of the trees to the owner. Id. at 345. The Appellate Division emphasized that "the arrangement of buildings, shade trees,

17

fruit trees, and the like may be <u>very important</u> to [the owner] . . . and the modification thereof may be an injury to his convenience and comfort in the use of his premises which fairly ought to be substantially compensated.'" <u>Id.</u> at 346 (ellipsis in original) (quoting <u>Samson Constr. Co. v. Brusowankin</u>, 147 A.2d 430, 435 (Md. 1958)). Citing the Restatement, the court reasoned that

> [s]ound principle and persuasive authority support the allowance to an aggrieved landowner of <u>the fair cost</u> of restoring his land to a reasonable approximation of its former condition, without necessary limitation to the diminution in the market value of the land, where a trespasser has destroyed shade or ornamental trees or shrubbery <u>having peculiar value to the owner</u>.
>
> [<u>Id.</u> at 345 (emphases added).]

The court did question the reasonableness of the plaintiff's more than $100,000 restoration estimate but found "its admission was harmless since the verdict does not appear to be founded thereon." <u>Id.</u> at 346-47.

Significantly, the almost sixty-year-old decision in <u>Huber</u> is the only one in this State's history to find that trees or shrubbery had "peculiar value" justifying restoration costs in excess of diminution of value in the context of a trespass or conversion claim. In contrast, New Jersey cases have historically rejected claims that certain foliage had peculiar value warranting damages for trespass beyond diminution in value. <u>See, e.g.</u>, <u>Mosteller</u>, 416 N.J. Super. at 634-35; <u>Hollister v. Ruddy</u>, 66 N.J.L. 68, 78 (Sup. Ct. 1901) (rejecting that

18

certain trees had "peculiar" or "special value" to the owner such that trespassory removal of those trees could justify punitive damages in addition to compensation for diminution in value).

Mosteller is the most recent case rejecting a claim premised on the peculiar value of certain trees. 416 N.J. Super. at 634-35. There the plaintiff was a non-resident landowner of several rental properties. Ibid. The defendant, who owned the property adjoining plaintiff's, hired a tree service to remove several trees from what she believed to be her yard. Id. at 635. Six mature trees were removed from the plaintiff's property without the plaintiff's knowledge or permission. Ibid. Distinguishing Huber, the Appellate Division in Mosteller held that the facts before it required application of the diminution in value standard. Id. at 641. In applying diminution of value as the appropriate measure of damages, the Appellate Division agreed with the trial court that the trees removed had no peculiar value and acknowledged that the plaintiff did not "reside at the property" and "[had] a more difficult burden in proving that the trees were of peculiar or special importance to him." Ibid. The court concluded the enormity of the cost to replace the lost trees unreasonably outweighed the "perhaps even negligible" diminution of the property's market value. Id. at 641-42.

We now apply the principles distilled from the Restatement and case law to the facts of this case.

B.

The Kornbleuths' counsel argued at length at the hearing on their motion for reconsideration that "[p]laintiff's right was to elect restoration. . . . They could have made any number of elections, certainly at least two that we know of, because diminution is recognized as an alternative remedy. . . . They elected restoration." The Kornbleuths never alleged or offered evidence of any losses incident to removal of the bamboo, cf. Huber, 71 N.J. Super. at 340-41 (presenting evidence of losses in terms of the value of trees as timber or as shade trees, as well as losses related to cleaning up debris), or sought to prove diminution of value damages. They instead claim the nature of the damages sought here -- restoration costs -- is an election available to the aggrieved party in a claim for trespass to land, and the trial court's failure to honor their election of restoration costs was palpably incorrect. Based upon the relevant legal sources, we cannot agree with counsel's assertions.[6]

---

[6] We note that the Kornbleuths never argued that the trial court should have denied summary judgment because they are entitled to at least nominal damages, notwithstanding opportunities to so argue in their opposition to summary judgment, in their motion for reconsideration, in their briefs to the Appellate Division, or in their briefs to this Court. Indeed, the issue of nominal damages was raised for the first time in this appeal in a question from

20

Comment (b) to section 929 of the Restatement limits damages recoverable for trespass to land to the diminution in the value of the land when the restoration costs are disproportionate to the diminution in value and there is no reason personal to the owner for restoring the property to its original condition. However, even when restoration costs are disproportionate to the diminution in value, those costs may be recovered if there is a reason personal to the owner for restoring the property to its original condition and those costs are not unreasonable. See Mosteller, 426 N.J. Super. at 638-40.

The Kornbleuths claim that the bamboo fence had peculiar value because they lived on the property and because the fence provided privacy and had aesthetic value to them. Plaintiffs' evidence of peculiar value is summarized in the following excerpt from Ms. Kornbleuth's deposition:

> I wouldn't buy a house looking at anybody's underside of their house. . . . My house was built around a deck, a beautiful backyard with bamboo, a waterfall, whatever was there when we bought the house . . . . We enjoy -- looking out our windows. Now I look under their ugly house with their crap and live like pigs. . . . I love my backyard; I love the privacy of it, you know, felt like I was in the woods.

The trial court concluded that plaintiffs' general interest in privacy and vague assertions of aesthetic worth cannot, as a matter of law, establish value

the Court at oral argument and now again in the dissent. See post at ___ (slip op. at 15-19).

21

personal to the owner that might justify the award of restoration costs. Additionally, the trial court recognized that the Kornbleuths offered no evidence that their property's value declined when contractors removed the bamboo fence.

After the trial court granted summary judgment, plaintiffs sought reconsideration but offered no new evidence, citations, or explanation with any tendency to show that the court's decision to grant summary judgment was palpably incorrect or irrational, or that the court failed to appreciate the significance of probative, competent evidence. See R. 4:49-2; Guido, 202 N.J. at 87-88. The Kornbleuths' motion for reconsideration maintained that it is their right to choose restoration costs over diminution of value regardless of the difference in amount between restoration and diminution, thereby ignoring Restatement section 929 and New Jersey law on damages for trespass to land.

Only evidence of damages "likely to afford full and reasonable compensation" is presented to the trier of fact. Mosteller, 416 N.J. Super. at 638; see also id. at 640 ("[T]he cardinal principles are flexibility of approach and full compensation to the owner, within the overall limitation of reasonableness." (quoting Huber, 71 N.J. Super. at 346)). When restoration costs are disproportionate to diminution of value and there is no reason personal to the owner for restoring the property to its original condition,

restoration costs are not reasonable. Even when there is a reason personal to the owner for restoring the property to its original condition, the upper limit of damages is "reasonableness." In short, whether restoration costs may be recovered is not an election of the aggrieved party but is dependent upon a showing that such damages are reasonable.

Plaintiffs' assertions of peculiar value do not resemble those set forth in Huber -- a diverse grove of some fifty colorful seventy- to eighty-five-year-old trees. See 71 N.J. Super. at 333. Nor do they resemble those described in the Restatement commentary -- a "building such as a homestead [that] is used for a purpose personal to the owner[,]" or a "garden [that] has been maintained in a city in connection with a dwelling house." Restatement (Second) of Torts § 929 cmt. b. A general interest in privacy and vague assertions of the aesthetic worth of bamboo as opposed to any other natural barrier do not establish value personal to the owner.

Additionally, even if the Kornbleuths presented legally sufficient evidence of peculiar value, proportionality and reasonableness of restoration costs could not be determined without evidence of diminished value or some similarly helpful yardstick for comparison. In Huber, for example, the plaintiffs presented evidence of the property's value when purchased, damages resulting from the loss of timber, the value of the lost trees as shade trees, and

23

other incidental damages, which together formed a basis for comparison. 71 N.J. Super. at 340-41. The jury returned a verdict in favor of the plaintiffs in the amount of $6500; more than the cost of replacing the trees with three saplings, but far less than the approximately $100,000 estimate of replacement costs using mature trees. Id. at 346-47.

On the evidence presented by plaintiffs here, a trier of fact would be legally disabled from determining whether restoration costs are a reasonable measure of damages since plaintiffs produced no evidence against which proportionality or reasonableness might be assessed. Hence, the trial court rationally explained its decision relying upon existing legal principles when it found no evidence of diminished value and no "genuine issue of material fact that there was some peculiar value as to the specific type of bamboo that was lost." The trial court's decision therefore was not "based upon a palpably incorrect or irrational basis." Guido, 202 N.J. at 87-88. Thus, we conclude that the trial court did not abuse its discretion in refusing to reconsider its order granting summary judgment to defendants.

VI.

For the foregoing reasons, the judgment of the Appellate Division is affirmed.

24

CHIEF JUSTICE RABNER and JUSTICES PATTERSON and FERNANDEZ-VINA join in JUSTICE SOLOMON'S opinion.  JUSTICE LaVECCHIA filed a dissent, in which JUSTICES ALBIN and TIMPONE join.

Joseph Kornbleuth, DMD,
and Donna Kornbleuth,
husband and wife,

Plaintiffs-Appellants,

v.

Thomas Westover and Betsy
Westover, husband and wife,

Defendants-Respondents,

and

New Jersey Bamboo Landscaping,
LLC, and Alexander Betz,

Defendants.

JUSTICE LaVECCHIA, dissenting.

Today's decision by the majority diminishes the protections provided under the law of trespass and is out of step with persuasive and soundly reasoned decisions from other jurisdictions. It denies fair compensation to a property owner whose trees or landscaping are destroyed by a trespasser. It also cheapens the worth of the trees and landscaping both in their aesthetic and monetary value. I therefore respectfully dissent from the Court's affirmance of the dismissal of this action.

1

I.

Plaintiffs Joseph and Donna Kornbleuth filed this action against defendants, their neighbors, Thomas and Betsey Westover, and their agents, alleging trespass, conversion, and negligence based on defendants' unauthorized entry onto plaintiffs' land and destruction and removal of "dense, mature [bamboo] trees and elevated vegetation growth" that had created privacy and a border in the rear of the Kornbleuths' backyard. According to the complaint, on a day when neither plaintiffs nor their neighbors were home, a landscaper, no longer a party to this action, entered plaintiffs' property and removed mature bamboo trees and vegetation growing between the neighboring properties. Plaintiffs allege that the landscaper was told that plaintiffs had agreed to the removal -- an assertion that plaintiffs vehemently deny.

To the Kornbleuths, the bamboo privacy screen was important and valuable. When deposed, Mr. Kornbleuth testified that, prior to its removal, he had enjoyed both the beauty and privacy the bamboo provided for his backyard. As he described his residential property, "the back of [his] house is all windows that look[] out into the back and the woods and it was completely private." He testified, "I love my backyard, I love the privacy of it"; "I

2

thoroughly enjoyed it"; "you know, [I] felt like I was in the woods and . . . it was destroyed."

Plaintiffs' two-count complaint alleged that defendants willfully and intentionally engaged in trespassing conduct. In addition, plaintiffs specifically contended that defendants intentionally caused harm to their property and claimed general, special, and punitive damages as recompense. For that, they presented evidence of the cost to restore the property. However, notwithstanding the claimed intentional trespass and undisputed destruction and removal of trees and vegetative growth in plaintiffs' residential backyard, plaintiffs found their claims dismissed[1] because -- according to the trial court, Appellate Division, and now this Court -- they did not present proof of a diminution in the overall value of their residential property.

That approach is unsound. It overextends the holdings and reasoning of the prior Appellate Division decisions on which it relies, Mosteller v. Naiman, 416 N.J. Super. 632 (App. Div. 2010), and Huber v. Serpico, 71 N.J. Super. 329 (App. Div. 1962), altering our law and making it less protective of residential property owners.

---

[1] The case was initially dismissed without prejudice on the day of trial. Reinstatement was conditioned on payment of a sanction. The complaint was eventually reinstated.

3

The majority decision is not in keeping with the commonly accepted approach to the demonstration of compensatory damages for intentional harm to land, over and above damages that are presumed for the tort of intentional trespass. The majority's approach makes it virtually impossible for a residential property owner to secure relief from a trespassing neighbor who, in pique, decides to come onto the owner's property and remove bushes, trees, or other landscaping or natural growth that the neighbor does not like.

## II.

## A.

A plaintiff can obtain recovery for the damage done to one's land by an intentional invasion. Compensatory and other relief is available for harm to land based on a past invasion.

Plaintiffs pleaded such harm and produced evidence of the replacement cost in support of their pursuit of compensatory damages, but they were not permitted to present that evidence to a factfinder. Plaintiffs are correct that the trial court erred in holding that the proper measure of damages for destroyed noncommercial or non-ornamental trees on their residential property was the difference between the property's value before and after the harm. They are also correct that it was error to dismiss their action because plaintiffs presented

4

in their prima facie case only evidence of proposed replacement costs for the destroyed and removed trees.

B.

Compensatory, or actual, damages are understood in this state to mean compensation to make the injured party whole, to put that person in the same position he was in prior to the damage; in other words, to restore the injured party, as nearly as possible through the payment of money, to the position he was in before the wrongful injury occurred. See, e.g., Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 48 (1984); Patusco v. Prince Macaroni, Inc., 50 N.J. 365, 368 (1967) ("An injured person is entitled to be made whole."); Berg v. Reaction Motors Div., Thiokol Chem. Corp., 37 N.J. 396, 412 (1962); Maul v. Kirkman, 270 N.J. Super. 596, 618 (App. Div. 1994).

Replacement-cost damages represent the actual price of remedying an injury to land based on a past invasion and, as such, are legitimately compensatory damages. The Restatement (Second) of Torts (Am. Law. Inst. 1979) ("Restatement") section 929 supports restoration costs as a proper measure of damages for injury to real property in certain circumstances. Section 929 provides in part,

> (1) If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for

5

> (a) the difference between the value of the land before the harm and the value after the harm, or at his election in an appropriate case, the cost of restoration that has been or may be reasonably incurred.

[Restatement § 929.]

Comment (b) to section 929 further explains the availability of restoration damages. It states, in full, as follows:

> Even in the absence of value arising from personal use, the reasonable cost of replacing the land in its original position is ordinarily allowable as the measure of recovery. Thus if a ditch is wrongfully dug upon the land of another, the other normally is entitled to damages measured by the expense of filling the ditch, if he wishes it filled. If, however, the cost of replacing the land in its original condition is disproportionate to the diminution in the value of the land caused by the trespass, unless there is a reason personal to the owner for restoring the original condition, damages are measured only by the difference between the value of the land before and after the harm. This would be true, for example, if in trying the effect of explosives, a person were to create large pits upon the comparatively worthless land of another.

> On the other hand, if a building such as a homestead is used for a purpose personal to the owner, the damages ordinarily include an amount for repairs, even though this might be greater than the entire value of the building. So, when a garden has been maintained in a city in connection with a dwelling house, the owner is entitled to recover the expense of putting the garden in

6

> its original condition even though the market value of the premises has not been decreased by the defendant's invasion.
>
> [Restatement § 929 cmt. b.]

That the Restatement supports the use of replacement damages in a harm-to-property action is well recognized. See Vaught v. A.O. Hardee & Sons, Inc., 623 S.E.2d 373, 376 (S.C. 2005) (citing cases approving section 929).

The majority opinion of this Court adopts the Restatement's section 929 approach but applies that section restrictively. The Court outright states, as a rule, that a plaintiff, like our residential property owners here, cannot elect to present restorative damages. And, even though accepting that restorative damages may be available, the majority imposes too strict a test for such an award. Other jurisdictions have adopted more measured approaches while still providing a rubric that both ensures reasonableness in award and adheres to the approach that actual damages aim to restore the injured party, so far as money can, to the position he or she was in prior to injury.

## C.

Several courts view access to restorative damages at a plaintiff's election as an application of normal tort recovery that should not be dispensed with when dealing with injury to land. And those courts readily recognize that diminution in value can serve as a reasonableness marker when assessing the

7

restorative damages that a plaintiff seeks; however, the plaintiff is allowed to make an election on how to proceed with his or her case in the first instance.

The State of New York provides a prime example. The Court of Appeals in New York, in Jenkins v. Etlinger, 432 N.E.2d 589 (N.Y. 1982), addressed whether it is the plaintiff's burden to present proof of both restoration and diminution in value evidence in a trespass case. The plaintiffs' pond and trees were destroyed when the defendant's "landfill" washed onto the plaintiffs' property. Id. at 590. The plaintiffs sought restoration damages, ibid., and the defendant argued that it was the plaintiffs' burden to provide evidence both of restoration and diminution in value, id. at 591. Accordingly, in resolving that burden allocation, the New York Court explained that

> the plaintiff need only present evidence as to one measure of damages, and that measure will be used when neither party presents evidence going to the other measure.
>
> Plaintiffs here met their obligation to provide evidence of the amount of the injury. That they did not prove their injury under every potentially applicable measure should not operate to deprive them of recovery.

[Ibid.]

Recognition that a plaintiff in a harm-to-property case is not limited to diminution-in-value damages, but rather can seek restorative damages, is present in numerous other decisions. Such cases reflect that there is a burden

8

shift at work, hence the decisions reflect adherence to the goal of reasonableness in award without placing undue burden on a plaintiff -- particularly a residential property owner -- when it comes to peculiar value of the property that is harmed. See, e.g., Mikol v. Vlahopoulos, 340 P.2d 1000, 1001 (Ariz. 1959) (holding that, in a trespass case, where two measures of damages are available and the plaintiff presents evidence of one, "it is up to the defendant, who has the burden of showing a reduction in damages, to show that the other measure would be less"); Farr W. Invs. v. Topaz Mktg. L.P., 220 P.3d 1091, 1095 (Idaho 2009) (plaintiff sued for trespass and presented restoration damages; the court held that the party who injured the property bears the burden of showing the diminution in value because that party "will benefit by establishing the reduction in the property's value"); cf. Bd. of Cty. Comm'rs v. Slovek, 723 P.2d 1309, 1310 (Colo. 1986) (holding that, in a negligence action tried before a judge, "[t]he measure of damages for injury to real property 'is not invariable'" and the goal is to compensate the property owner for the actual loss suffered; the court further clarified that the rule for diminution in value "is not of universal application"); John Thurmond & Assocs., Inc. v. Kennedy, 668 S.E.2d 666, 668-69 (Ga. 2008) (holding that, in a negligence case, the plaintiff may choose its method of measuring damages and the burden shifts to the defendant to present contradictory evidence);

9

Langlois v. Town of Proctor, 113 A.3d 44, 58-59 (Vt. 2014) (holding that, in a negligence case where the plaintiff introduced evidence of restoration costs and the defendant offered no evidence of damages, the plaintiff satisfied her prima facie case and the burden of producing additional evidence was on the defendant).

The respective burdens placed on plaintiffs and defendants in harm-to-property cases and the calculation of compensatory damages was elaborated on in a Kentucky case. The Kentucky Supreme Court recognizes that a plaintiff seeking restoration cost damages in an injury to property trespass case need not introduce evidence of the fair market value being diminished as a condition of stating a prima facie case and defeating a motion for directed verdict. Ellison v. R & B Contracting, Inc., 32 S.W.3d 66, 74 (Ky. 2000) (citing Newsome v. Billips, 671 S.W.2d 252, 254-55 (Ky. Ct. App. 1984)). Even when the defense advances evidence of diminution of value, the Kentucky Court has allowed a plaintiff reasonable inferences from restoration-cost-damages evidence to avoid a directed verdict at the close of plaintiff's case, notwithstanding that plaintiffs did not present an appraisal. Id. at 75-77.

But by far the most persuasive discussion of these issues was presented in a case decided by the Supreme Court of Nebraska. In Keitges v. VanDermeulen, 483 N.W.2d 137 (Neb. 1992), the Nebraska Court addressed

10

what, for it, was a novel question: "whether a plaintiff is entitled to recover the cost of restoring trees and vegetation on land which he holds for residential or recreational purposes when a portion of a natural woods is destroyed." Id. at 140.

The plaintiffs in Keitges sought damages under willful trespass and negligent trespass after the defendant, while installing fencing between the two properties, used a bulldozer to destroy trees, shrubs, and vegetation on their property. Id. at 138. The plaintiffs asserted that the trial court erred by not permitting them to present restoration costs to the jury. Ibid. The trial court decided that, because the trees were not "ornamental" or harvested for timber, the plaintiffs' only remedy was for diminution in value damages. Id. at 140. However, the Nebraska Supreme Court rejected the distinction between ornamental and other trees. Id. at 143. The Nebraska Court read the Restatement and its comment on restorative damages as consistent with its general approach to the allowance of damages to restore an injured person to the position he or she would have been in had there been no injury, to the extent money could do that. Id. at 142. Hence it viewed restorative damages as fitting compensation for the injury done even when land is involved, provided it can be restored to its prior condition. Id. at 142-43.

Importantly, when presented with the defendant's argument that the plaintiffs were required to use diminution-in-value damages and were precluded from restorative-cost damages unless the destroyed trees could be characterized as "ornamental," the Court asserted the following:

> [W]e believe that is an artificial distinction. One person's unsightly jungle may be another person's enchanted forest; certainly the owner of such land should be allowed to enjoy it free from a trespasser's bulldozer. Indeed, a trespasser should not be allowed, with impunity, to negligently or willfully wreak havoc on a landowner's natural woods, and the landowner's attempted recovery for such injury should not be entirely frustrated by the fact that the market does not reflect his personal loss.
>
> [Id. at 143.]

The Nebraska Court held that when a plaintiff intends to use the property for residential or recreational reasons "according to his personal tastes and wishes" and seeks to restore the property, "diminution in value has no relevance." Ibid. The plaintiff may recover the cost of reasonable restoration of his property to its preexisting condition or to a condition as close as reasonably feasible. Ibid. In remanding for a new trial, the court instructed that such costs may not exceed the market value of the property before the injury. Ibid.

In sum, many jurisdictions do not require a plaintiff to show diminution in value in order to state a prima facie case in an injury-to-property cause of

12

action. Although the cases span various forms of injury to property, they reflect consistency in allowing a property owner the choice to present evidence of damages in the form of restoration damages and, to the extent that reduction in the overall value of the property serves as a cap on the reasonableness of damages, the burden is on the alleged tortfeasor to come forward to show that the requested restoration cost is unreasonable.

D.

I would follow the approach employed in the cases discussed above, which recognizes that a plaintiff has a choice, in presenting a prima facie case, to proceed with a claim based on injury to land by presenting replacement cost damages. Those cases present a fair and balanced approach to assessment of compensatory damages in this matter. The majority's pronouncement that plaintiffs had to present their claim for compensatory damages by showing a diminution in value, see ante at ___ (slip op. at 23), provides an illusory remedy for New Jersey residential homeowners who might have a portion of their backyard landscaping demolished and removed by a trespasser. When it comes to injury to property on which a person resides, diminution-in-value damages will, only in the most extreme case, allow for recovery of damages caused by an intentional invasion.

13

To the extent that the majority offers the slim hope that universally acclaimed "ornamental" trees and shrubbery can be replaced, that is too restrictive an application. For the majority, it is the sine qua non of being able to ask for any damages at all when it comes to one's backyard natural and landscaped grounds.

In taking that position on the law, both the Appellate Division and now this Court extended the prior holding in Mosteller, on which they rely. Mosteller did not set forth requirements for allowing a case involving harm to property to get to the factfinder. It addressed the fairness of the assessment of damages. Mosteller, 416 N.J. Super. at 641, 643. Further, the majority overlooks that both Huber and Mosteller expressly recognized that diminution in value was not the required measure of damages but played a role in the assessment of reasonableness. See id. at 641; Huber, 71 N.J. Super at 346. Indeed, in Huber, the Appellate Division stated that in the arena of cases involving trespass and harm to property held as a homesite, "the cardinal principles are flexibility of approach and full compensation to the owner, within the overall limitation of reasonableness." 71 N.J. Super at 346. Even in Mosteller, the Appellate Division declined to pronounce any hard and fast rule about insistence on diminution in value; rather, it upheld a case-specific measure of damages upon review of a motion court's ruling about the interests

14

involved. 416 N.J. Super. at 643. Again, the Appellate Division did not purport to impose mechanistic requirements to get before the factfinder. The Mosteller court in fact recognized the prospective need that plaintiffs recover restoration damages in other cases not before it, such as where there was a "need to deter deliberate wrongdoing or reckless behavior." Id. at 642. In fact, neither appellate decision addressed circumstances such as this case presented, where plaintiffs were denied the opportunity to present their case to the factfinder.

In sum, one's personal taste in backyard ambiance is entitled to more respect from our courts and our tort system of recovery for an intentional wrong.

## III.

### A.

Moreover, I am compelled to add that the summary dismissal of plaintiffs' intentional trespass action is fundamentally at odds with the interests served by the tort and the universal recognition that nominal damages are presumed for intentional trespass. The Court's dismissive comment that plaintiffs did not plead nominal damages risks sowing confusion over what the tort protects and how it is vindicated.

B.

To understand the modern application of trespass, it is important to consider its background. Stuart M. Speiser et al., American Law of Torts § 23:1 (1983). Trespass originated as a criminal action; it was considered a breach of the peace that placed the peace of the community at danger. Ibid. In part to discourage "disruptive influences in the community," a plaintiff who suffered no actual damages could still seek relief. Ibid.

Under the common law, the most important consideration was the possessor's right to exclusive use of the property. W. Page Keeton et al., Prosser and Keeton on Torts § 13, at 67 (5th ed. 1984); see also Dan B. Dobbs et al., Law of Torts § 49, at 125 (2d ed. 2011) (stating it is enough that there is an "intentional interference with the rights of exclusive possession"). The interest protected amounted to nothing more than "a feeling that what a person owns or possesses should not be interfered with and that the person is entitled to protection under the law." Speiser, § 23:1. Every direct entry upon another's land amounted to some damage, "if nothing more, the treading down of grass or herbage." Keeton, § 13, at 75. Therefore, at common law, a plaintiff could recover nominal damages even if the trespass resulted in a benefit to the plaintiff. Ibid.

New Jersey has long recognized the principle that nominal damages are recoverable in a trespass claim. In an early suit against a defendant for cutting down the plaintiff's timber, the Court of Errors and Appeals reversed the trial court's dismissal of the plaintiff's claim for failure to present evidence of damages to the jury. Lance v. Apgar, 60 N.J.L. 447, 448 (E. & A. 1897). The Court stated that, at common law, "the committing of a trespass upon the rights of another was, per se, a legal injury from which some damage to the plaintiff would be inferred." Ibid. Even if no injury was shown, the law implies nominal damages where there is "actionable misconduct" by the defendant. Ibid.

More recent cases in New Jersey, as well as elsewhere, recognize nominal damages for trespass regardless whether damage is proved. See Nappe, 97 N.J. at 46 (stating that, in a trespass-on-property action, "in the absence of actual damages, the law vindicates the right by awarding nominal damages"); N.J. Mfrs.' Ass'n Fire Ins. Co. v. Galowitz, 106 N.J.L. 493, 494-96 (E. & A. 1930) ("[W]here actionable misconduct is shown, the law implies nominal damages at the least." (citing Apgar, 60 N.J.L. at 447)); see, e.g., Ellison, 32 S.W.3d at 71 (recognizing that, where appropriate, "even if the plaintiff suffered no actual damage as a result of the trespass, the plaintiff is entitled to nominal damages"); Goforth, 352 P.3d at 250 ("'[A]t least' nominal

17

damages are available where an actionable trespass has occurred." (quoting

Bellis v. Kersey, 241 P.3d 818, 825 (Wyo. 2010))); see also Dobbs, § 56, at 49

("[A] trespasser is always liable to the possessor for at least nominal damages

for the intrusion upon possession.").

In its most modern pronouncement on the subject, the Restatement

section 158 summarizes that very principle in addressing a defendant's liability

for intentional intrusion on land:

> One is subject to liability to another for trespass, irrespective of whether he thereby causes harm[2] to any legally protected interest of the other, if he intentionally
>
> (a) enters land in the possession of the other, or causes a thing or a third person to do so, or
>
> (b) remains on the land, or
>
> (c) fails to remove from the land a thing which he is under a duty to remove.

This Court has adopted section 158, reiterating only recently that "[a]

defendant is liable in trespass for an 'intentional[]' entry onto another's land,

---

[2] Section 158, comment d., explains that "harm" is defined in Restatement section 7. Section 7 defines injury, harm, and physical harm; its comment a. explains the difference between harm and injury, stating that "any intrusion upon land in the possession of another is an injury, and, if not privileged, gives rise to a cause of action even though the intrusion is beneficial, or so transitory that it constitutes no interference with or detriment to the land or its beneficial enjoyment."

18

regardless of harm." Ross v. Lowitz, 222 N.J. 494, 510 (2015) (emphasis added); see also Restatement § 163 ("One who intentionally enters land in the possession of another is subject to liability to the possessor for a trespass, although his presence on the land causes no harm to the land . . . .").

Plaintiffs were entitled to the enjoyment of their residential property free of intentional interference by defendants. They also were entitled to pursue their action before a factfinder without the trial court short-circuiting and dismissing their claim as if plaintiffs had no valid cause of action.

IV.

I express no view on the ultimate outcome of this action. However, based on their allegations, plaintiffs presented a claim for which nominal damages are presumed under settled law of trespass and also presented a prima facie claim for reasonable damages for the alleged destruction of the bamboo trees and vegetation that provided their backyard with an atmosphere of privacy and seclusion.

Although plaintiffs no doubt bear the ultimate burden when seeking compensatory damages in a harm-to-land case based on invasion, plaintiffs should not be compelled to produce evidence of diminution in value of the entirety of the property in order to get before the factfinder. Plaintiffs should be permitted to proceed with evidence of restoration damages for the trees

19

destroyed. Ultimately, the factfinder would determine the reasonableness of the claimed compensatory damages. It should be up to the alleged wrongdoer defendants to call into question the reasonableness of the damages in order to get a damage award reduced. When there is proven harm to residential property, a victim is entitled to reasonable damages, and that principle remains apt whether the harm is to a shrub that is acclaimed as "ornamental" or simply the preferred trees, shrubs, or vegetation of the property owner.

The Court's resolution of this matter has big consequences for future cases involving damage to residential property. The Court has now established that a residential property owner, whose trees, shrubs, or other vegetation on his or her property are destroyed by actions of trespassing neighbors, has no recompense unless that owner comes to court armed with proof of diminished overall property value. I cannot join in that development in our common law; it unduly restricts the right of residential property owners to the restoration of their property.

I respectfully dissent.[3]

---

[3] I also respectfully dissent from the affirmance of the sanction imposed on plaintiffs as a condition of this matter being reinstated. Plaintiffs' counsel made an adjournment request. He stated reasons for the request. I am at a loss to understand the treatment of plaintiffs' claim and their counsel, who is a senior member of the bar and was depending on an associate and his IT assistant in presenting his case. Both were unavailable for legitimate reasons

beyond their control.  His adjournment request was not unreasonable and to have it met with sanctions is confounding.